Turna R. LEWIS, Plaintiff,

v.

AMERICAN FOREIGN SERVICE
ASSOCIATION, Defendant.

No. 92–CV–1803 (CRR).

United States District Court,
D. Columbia.

April 12, 1993.

As Amended May 6, 1994.

Janet Cooper, Washington, DC, for plaintiff.

Alfred F. Belcuore of Montedonico, Hamilton & Altman, Washington, DC, for defendant.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

Before the Court is a race discrimination claim brought by the Plaintiff, Turna R. Lewis, an African–American female, against the American Foreign Service Association (AFSA), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. Trial was held in this case on March 5 and 10, 1993.[1] The Court, after careful consideration of the submissions of the parties, the testimony of witnesses, the exhibits, the arguments of counsel, the applicable law, and the entire record herein, concludes that the Plaintiff has not proved that the Defendant AFSA discriminated against her because of her race. The Court shall therefore enter judgment for the Defendant on the Title VII claim. The following shall constitute the Court's Findings of Fact and

---

1. This Title VII action was tried to the Court. Although the Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, provides for a right to a jury trial in certain cases arising under Title VII, the parties agree that there is no right to a jury trial on the Title VII claim in this case, because the challenged conduct occurred prior to November 21, 1991, the effective date of the Act.

The Plaintiff brought another claim in this action pursuant to 42 U.S.C. § 1981, in which the Plaintiff claimed that she was harassed and ultimately terminated in retaliation for filing her complaint with the EEOC. On March 5, 1993, the jury found that there was retaliation, but that her termination was only motivated in part by that retaliation. They also found that the defendant would have discharged the Plaintiff regardless of the motive to retaliate and awarded no damages to the Plaintiff.

Conclusions of Law, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The Plaintiff is a young African–American woman who is brilliantly educated, with a bachelor's degree in political science, a master's degree in public administration, and a law degree from the University of Denver School of Law. In April 1990, she became General Counsel for the Defendant, AFSA, a professional association and labor union for government employees in the foreign service. Immediately prior to her tenure as General Counsel, she served as assistant counsel for the National Treasury Employees Union (NTEU). She has also served as budget/policy analyst for the Colorado Joint Budget Committee, legal assistant in the Environmental Litigation Section of the Department of Justice, and attorney advisor to the Benefits Review Board at the United States Department of Labor.

In July 1991, the Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), claiming that AFSA discriminated against on account of her race with respect to the terms and conditions of her employment. The EEOC issued a right to sue letter in May 1992. The Plaintiff thereafter brought suit in this Court in August 1992.

Trial was set and held in March, 1992. At this point, the Court is compelled to respond to the remarks made by the Plaintiff's counsel in open court, by telephone to the Court's Courtroom Clerk, and in her Unopposed Motion for Short Extension of Time and Points and Authorities in Support Thereof. The Plaintiff's counsel objected to resuming the Title VII portion of the trial on March 10, 1993, because she claimed she had obligations to other clients. Although this Court regrets that the trial did not conclude on March 5, 1993, despite the best efforts of the Court and the fact that the Court remained in session until after 5:00 p.m. on that day, the Court notes that the jury portion of this trial, begun on March 3, 1993, was significantly delayed because the parties failed to submit a complete joint set of jury instructions, and the Court was required to expend a great deal of time and energy drafting its own jury instructions and having the parties approve the instructions line by line. The time taken to create a set of jury instructions both consistent with the law and acceptable to both parties consequently delayed the presentation of the Title VII portion of the case until Friday, March 5, 1993.

The Court also notes that both counsel represented to the Court on March 5, 1993, that the Title VII portion of the trial could be completed on that day; however, the Plaintiff's counsel took most of the day for direct examination of her client. Although the Court does not begrudge the Plaintiff's counsel the time necessary to fully present her case, she cannot then be heard to complain that the trial extended beyond its allotted time. To delay the presentation of the Defendant's case-in-chief until another, possibly much later, date would have been unfair and inefficient. The trial date in this matter had been set since September 2, 1992, and the Court went to great lengths to arrange its criminal docket so that the trial date would not have to be continued. The Court notes that the Defendant was also unavoidably inconvenienced by resuming the trial on March 10 by not being able to have one of its witnesses present on that day. Based on all the circumstances, however, the Court properly concluded the trial on March 10. Plaintiff's counsel had a continuing obligation to this Court and to her client in this case to assist in the just and speedy resolution of the pending trial.

## III. THE PLAINTIFF'S CLAIM BROUGHT PURSUANT TO 42 U.S.C. § 2000e MUST FAIL, BECAUSE THE EVIDENCE PRESENTED AT TRIAL CANNOT SUPPORT A FINDING THAT THE DEFENDANT DISCRIMINATED AGAINST THE PLAINTIFF ON ACCOUNT OF HER RACE

In actions brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Plaintiff bears the initial burden of establishing a prima facie case of discrimination. The defendant may rebut the plaintiff's case by providing legitimate, non-discriminatory reasons to refute the inference of discrimination raised by the plaintiff's allega-

tions. The Plaintiff must then prove, by a preponderance of the evidence, that the defendant's proffered reasons are merely pretextual. *See McDonnell–Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. The Plaintiff put forth several allegations to support her claim of discrimination, to which the defendant has responded with legitimate, non-discriminatory explanations. The Plaintiff has not supplied evidence to this Court that would indicate the Defendant's explanations as to its actions are pretextual or that racially discriminatory behavior affected her as General Counsel. She has therefore failed to carry her ultimate burden of persuasion.

The Court has thoroughly considered all of the Plaintiff's factual claims or allegations and finds that they fall generally into seven categories: 1) exclusion from AFSA and industry meetings; 2) criticism about her work from the Chairman; 3) review of her work by Caucasian colleagues and her Caucasian predecessor; 4) refusal to account for or provide help for the Plaintiff's large workload; 5) unfair performance evaluation; 6) disparate raise and bonus; and 7) offensive treatment by co-workers. The Court examines each of these allegations in turn.

■ As to the first issue, the Plaintiff claims that she was excluded from several meetings by her supervisor, Richard Milton, Chris Bazar, a Caucasian colleague, and Theodore Wilkinson, the AFSA President. She claims that despite the fact that the issues to be discussed at these meetings involved legal questions, Mr. Bazar was asked to attend these meetings instead of her. Denial of access to meetings and substitution of someone else is not a per se violation in and of itself of Title VII of the Civil Rights Act. In this case, the Plaintiff failed to show that these actions were taken on account of her race, and the Court has heard credible testimony from Mr. Milton and Ms. Lewis herself

that AFSA management had legitimate concerns about the amount of time that the Plaintiff was absent from the office going to various meetings. The Court heard credible testimony from Mr. Milton that there were occasions when the Plaintiff was unavailable for meetings or other AFSA needs because she was elsewhere attending to matters that Mr. Milton and Mr. Wilkinson thought to be of lesser importance than the competing tasks at hand. Moreover, in light of Mr. Bazar's four-year tenure with AFSA and the Plaintiff's admission at trial that the functions of the General Counsel and Director of Member Services overlapped, there were any number of proper reasons for not asking Ms. Lewis to attend these meetings.

■ In support of the Plaintiff's second claim, undue criticism, the Plaintiff testified that Mr. Wilkinson harshly criticized her in front of other employees at staff meetings and that others, specifically Caucasian employees, were not so criticized. The Court credits the testimony of Janet Hedrick, who worked at AFSA during the Plaintiff's tenure and is now the current Director of Membership Services. She testified that, if he considered it appropriate, Wilkinson did not hesitate to dispense criticism of AFSA employees, even if it meant criticizing people in front of other employees. Ms. Hedrick related several examples of such criticism aimed at Caucasian employees. Therefore, Mr. Wilkinson's treatment of the Plaintiff, while not necessarily commendable, did not occur on account of her race.

■ With regard to the Plaintiff's third contention, the Plaintiff testified that there were several occasions when her work was given to Caucasian colleagues to review, while she was never asked to review anyone's work. She also testified that on a few occasions she was required to consult her predecessor before making changes or starting new projects. The Court finds that the Plaintiff's relative newness to the organization was a legitimate explanation for both the review of her work and the consultation with her predecessor, who had been counsel for the organization for ten years.

■ As to the Plaintiff's fourth set of claims, that she was refused additional clerical help with her workload while Caucasian employees were given ample clerical support, the Plaintiff has not shown that this practice was motivated by race in any way. She had two part-time law clerks and a legal assistant working for her, as did her Caucasian predecessor, and the Plaintiff failed to establish her claims that she had significantly greater duties than her predecessor. As discussed above, the Defendant has, at several times throughout the proceedings, supplied testimony that the Plaintiff's supervisors had concerns about the Plaintiff's work priorities and felt that she spent too much time on outside projects. (*See also* Pltf.'s Exh. 57). In fact, looking at the totality of the evidence and observing the Plaintiff throughout the trial, a neutral observer is led to the inescapable conclusion that the Plaintiff was more interested in "issues" that needed to be "addressed" than in fulfilling her responsibilities as General Counsel.

■ Throughout the trial proceedings, the Plaintiff placed great weight on her performance evaluation being more critical than evaluations of Caucasian employees. Her six-month evaluation was completed by Mr. Milton, who had been at AFSA only three months at the time the evaluations were completed. Milton evaluated only two employees, the Plaintiff and Mr. Bazar, a Caucasian male. (Pltf.'s Exhs. 25, 28). The Court finds nothing in the evaluations themselves which would indicate race discrimination. Based upon the documentary evidence, and the testimony of the Plaintiff and Mr. Milton, the Court finds that, although at the end of 1990, AFSA management was generally pleased with the Plaintiff's performance as General Counsel, they also perceived problems not only with the Plaintiff's work priorities, but with the attention paid to detail in her work as well. (Def.'s Exhs. 39, 40). Although the Plaintiff's evaluation is less positive in tone

than Mr. Bazar's, the Court credits Mr. Milton's testimony that he considered the evaluation not to be a negative one but to be "forward-looking" to areas where the Plaintiff could improve.

■ Intertwined with the issue of the Plaintiff's evaluation, is the issue of salary increases and bonuses that AFSA gave out at the end of 1990. The exhibits show that she and another African–American woman received among the smallest salary increases at AFSA and also significantly smaller bonuses, the Plaintiff's bonuses being the smallest in percentage. However, the exhibits submitted by the parties regarding salary clearly indicate that the Plaintiff's salary increase of five percent was in line with other employees who had been with AFSA less than one year. Of these employees, increases in excess of five percent were awarded only to those who had been promoted and given more responsibilities in that year.

The Plaintiff also testified that her starting salary was considerably less than her predecessor or that of general counsels in similar organizations, although the AFSA handbook sets out a policy to pay salaries competitive with those of similar organizations. The Court notes that the Plaintiff's predecessor started at an annual salary of $16,500 in 1979 and, over the course of ten years with AFSA, worked up to a salary of $70,000. The Plaintiff, however, had under five years experience when she joined AFSA. The exhibits and undisputed testimony of the Plaintiff indicate that the Plaintiff sought $50,000 when she applied for the position, was notified at the first interview that the position paid $50,000, and that is the salary she accepted. The Defendant has also submitted testimony and exhibits clearly indicating that AFSA maintained lower salaries than the industry standard due to lack of resources, and that the Plaintiff was not singled out to receive less in compensation than her counterparts in other organizations.[2]

2. In regard to the setting of salaries, the Handbook provides:

The policy of the Association is to maintain salaries comparable to those prevailing in similar organizations in the Washington Metropolitan area, subject to the means of the Association and the availability of funds.... In deter-

mining salary adjustments the Executive Committee will take the following factors into consideration: "cost of living increases, length of the performance evaluation period (in cases of less than one year of employment), and successful job performance as documented in the performance review."

In January of 1991, after the Plaintiff discovered the amount of her predecessor's salary as well as the salaries of other General Counsel, she applied for a salary increase from $52,500 to $70,000, to be made retroactive to her starting date of April 1990. She claims that the denial of her request was discriminatory, because other employees were granted retroactive increases. The Court notes, however, the testimony of Cathy Fregelette, the Controller of AFSA, that retroactive increases were only awarded to those who had previous promotions or increases in responsibility, but did not have their salaries increased at the time they took on the new duties. The Plaintiff had no such promotion or increase in responsibilities. Additionally, Ms. Fregelette testified that another employee, who was Caucasian, requested and was denied a retroactive increase.

The Plaintiff did receive the smallest percentage bonus, and the only other two minority employees received the next smallest bonuses at the end of 1990. (Def.'s Exh. 13). The Court notes that one of those employees received one of the highest percentage salary increases at the end of 1990. ("Employee E," Def.'s Exh. 79). Additionally, the other minority employee received a promotion and significant salary increase in August 1990 as well as another salary increase in December 1990. As to the amount of the Plaintiff's bonus, the Court credits the Defendant's evidence indicating that concerns over the Plaintiff's priorities and commitment to her duties caused AFSA to consider granting no bonus at all to Ms. Lewis. In any case, the evidence does not support a finding that she was given a smaller bonus because of her race.

■ Finally, the Plaintiff claims she was subjected to offensive treatment by AFSA employees. Ms. Lewis testified that she took great offense at a letter sent to her home by the Controller, Cathy Fregelette. At the time, Ms. Lewis was recuperating from surgery, and she received a letter from Ms. Fregelette which requested that certain information be supplied that very day. Ms. Fregelette testified at trial that one of the law clerks was already intending to drop

Dft.'s Exh. 1).

things off at the Plaintiff's home that night and offered to bring the letter as well. She also testified that the due date for the requested information was simply a typographic error made by the secretary. She apologized to Ms. Lewis when she learned what had occurred and told her that taking a week to respond to the request would be fine. Whether or not the date on the letter was indeed a mistake is unimportant, because there was no adverse effect on the Plaintiff's work and there were no racial overtones to the incident at all.

■ The Plaintiff also complains strongly about a racially insensitive remark allegedly made in the Plaintiff's presence by Mr. Milton indicating that apartheid in South Africa had some favorable features. After the close of the Plaintiff's case-in-chief, Mr. Milton credibly denied that he made this statement. The Plaintiff also asserts in support of her claim that the former President, Wilkinson, responded to allegations that AFSA had a poor employment and advancement record with respect to minorities by joking that "AFSA is a white supremacist organization and Turna fell for it hook, line and sinker." This statement, if made, standing by itself, is not cognizable as racial harassment, and while the Court has no doubt that Ms. Lewis actually believes that many people at AFSA were not among the most progressive in terms of racial sensitivity, the Court is required to look at the totality of circumstances as well as the totality of the evidence. *See Carter v. Duncan–Huggins, Ltd.,* 727 F.2d 1225, 1236 (D.C.Cir.1984). Having done so, the Court finds that the majority of the employees of AFSA are women, including the Executive Director, and others who are also African–American. The Court has observed at trial that many AFSA employees, who are not African–American, are sensitive to their needs and the obligations of all employers to provide a work place free of discrimination on account of race. (*See* Def.'s Exhs. 33, 34).

## CONCLUSION

The Court concludes, based on all the evidence, that the Plaintiff, Turna Lewis, has

failed to establish by a preponderance of the evidence a case of racial discrimination. The evidence does not show the presence of illegal disparate treatment either in the compensation decisions involving the Plaintiff or in the various incidents that the Plaintiff alleges were all motivated by racial harassment. The Court finds that the Plaintiff failed to show unreasonably abusive or offensive conduct on the part of the Defendant or an environment which adversely affected the rights or duties of the Plaintiff's employment as required by Title VII. Therefore, the Court shall enter judgment for the Defendant and shall enter an Order of even date herewith consistent with the foregoing Opinion.