IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 92-2205

---

S.W. STEVERSON, JR.,

Plaintiff-Appellee,
Cross-Appellant,

versus

LEON GOLDSTEIN, ET AL.,

Defendants-Appellants.

LEON GOLDSTEIN, JOHNNY ISBELL and
JOHNNY KLEVENHAGEN,

Defendants,
Cross-Appellees.

---

Appeals from the United States District Court
for the Southern District of Texas

---
(June 15, 1994)

Before HIGGINBOTHAM and WIENER, Circuit Judges, KAUFMAN,[*] District Judge.

HIGGINBOTHAM, Circuit Judge:

A jury concluded that the Sheriff and Civil Services Commission of Harris County discriminated against Shelby W. Steverson on the basis of race, and that the Sheriff retaliated against Steverson for activity protected by the First Amendment. The district court found for Steverson on a parallel Title VII claim and entered judgment against the County based on its own

---

[*] District Judge of the District of Maryland, sitting by designation.

findings and the jury's verdict. Steverson argues on a cross-appeal that judgment should also have been entered against the Sheriff and others in their individual capacities. We AFFIRM.

I.

Shelby W. Steverson, an African American, has been employed as a Harris County Deputy Sheriff since 1979. During the evening of February 27 and the early morning of February 28, 1988, while serving as a private security guard at the U. W. Watkins' Country Club, Steverson became involved in a word fight with another officer, Sergeant Mark Walker.

Sergeant Walker has a history of using racial slurs. He has referred to African Americans in roll calls, for example, as "God damn niggers."[1] He also has used racial epithets to refer to members of the Harris County Sheriff's Department. Although the targets of these insults reported the incidents, the Department took no disciplinary action.

On the night of February 27, 1988, Sergeant Walker had been called by Steverson's fellow security guards in response to an attempted burglary near the Watkins' Country Club. Walker arrived and entered the club. According to the district court, "Once inside the Club, Walker verbally attacked Steverson in a racial manner without cause and in the presence of the night club customers. Steverson advised Walker that Steverson would report Walker's improper decorum. Racial tensions grew." Walker left the

---

[1] When asked whether he considered the term offensive, he responded that, in context, it was not.

2

club and its owner followed him. The owner objected to Walker's treatment of Steverson. Steverson intervened. Walker and Steverson exchanged angry words. The situation became heated because Walker was white while Steverson, the club owner, and most of the patrons of the club were black. Witnesses testified that violence threatened to ensue but in the end the parties went their separate ways in peace.

The next day Steverson reported the incident. Johnny Klevenhagen, the sheriff of Harris County, declined to process Steverson's complaint. When Steverson submitted the complaint to the Internal Affairs Division, he was told to resolve the issue informally. Steverson nevertheless pursued the matter. After the Department assessed the incident, Steverson was given a three-day suspension followed by a ninety-day probationary period. Sergeant Walker received a written reprimand.

Steverson appealed this result to Sheriff Klevenhagen, but to no avail. Steverson then asked the Harris County Sheriff's Department Civil Service Commission to review the sentence. Before the Commission heard the appeal, Steverson joined as a named plaintiff in a class action suit accusing the Department of discriminating on the basis of race. After hearing Steverson's appeal, the Commission increased Steverson's sentence to include seven more days of suspension. In several hundred cases the Commission had heard in the past, it had both decreased and affirmed but had never increased a sentence.

Steverson attributes his discriminatory treatment to race and his political activities. These activities included filing a class action Title VII suit against the Harris County Sheriff's Department, and founding and participating in an organization known as the African American Sheriff's Deputies League. The League opposed the election of Klevenhagen to the office of Sheriff of the County, and Steverson publicly endorsed a competing candidate, J.C. Mosier, for the position. Steverson spoke on the radio in favor of Mosier and attended a meeting with Mosier at which Klevenhagen was also present. Five days after Steverson spoke on the radio, he received an assignment requiring him to work undesirable hours. Steverson's new shift began at 6:00 pm and ended at 2:00 am, making it impossible for him to continue his private employment as a security guard. No other member of the Sheriff's Department had to work these hours.

The district court found as a matter of law that the Civil Service Commission violated Steverson's due process and equal protection rights by augmenting his sentence and, "out of an abundance of caution," made findings of fact. The court submitted to the jury Steverson's claims under 42 U.S.C. §§ 1981 and 1983 of discrimination on the basis of race and of retaliation for his Title VII lawsuit and his political activities. The jury found that Klevenhagen discriminated against Steverson on the basis of race and retaliated against him on the basis of political activities, that race played a part in the Commission's decision to augment Steverson's sanction, and that Sheriff Klevenhagen had a

4

policy of discriminating against African Americans.  But it also found that the policy was not a moving force in the violation of Steverson's constitutional rights.  The jury awarded Steverson compensation in the amount of $200,655.

## II.

The County[2] contests the jury's award of damages as founded on erroneous legal reasoning and as supported by inadequate evidence. The district court's conclusions of law and the jury's findings of fact provide various independent bases for affirming the judgment. We will affirm the judgment if any of these bases enjoys an adequate support in fact and law.[3]  Because the County did not move for a directed verdict on its own behalf or on behalf of Sheriff Klevenhagen, we will affirm if any evidence supports the jury's verdict.[4]  Finally, we will avoid the conclusion that the jury's

---

[2]  We will refer to the defendants collectively as the County, except where we must distinguish among them.

[3]  See Olney Sav. & Loan Ass'n v. Trinity Banc Sav. Ass'n, 885 F.2d 266, 271 (5th Cir. 1989) (noting that affirmance is appropriate "when the reviewing court can be reasonably certain that the jury did not base its verdict on an unsound theory") (citations and internal quotation marks omitted).

[4]  Bunch v. Walter, 673 F.2d 127, 130-31 (5th Cir. 1982) (citation and internal quotation marks omitted) (allowing affirmance of jury verdict on any evidence where party failed to move for directed verdict).  Counsel for the County did move for a directed verdict in regard to several defendants in their individual capacities, but the record does not indicate a motion for a directed verdict on behalf of Sheriff Klevenhagen or the County.  Steverson asserts that the County did not move for a directed verdict, and the County does not claim otherwise.

5

findings conflict with one another, if the facts of the case permit.[5]

III.

The County first argues on appeal that the district court erred in its conclusion that the Civil Service Commission violated Steverson's rights to due process and equal protection. The court based this conclusion on the language of the Harris County Sheriff's Department Civil Service Regulations and the manner in which the Commission implemented those regulations. The regulations empowered the Commission to "modify" disciplinary actions in response to an appeal by an employee. The court interpreted the regulations as not allowing the Commission to augment a disciplinary action. It also noted that Steverson received no notice that an appeal could result in an increased sentence, and that Steverson's was the first and only case among several hundred appeals in which the Commission increased a sentence. We need not assess the County's arguments that the court erred in its analysis because the jury verdict provides adequate alternative grounds for affirmance.

The jury found that race played a part in the Commission's treatment of Steverson.[6] The County contests the jury's finding of

---

[5]  See Griffin v. Matherne, 471 F.2d 911, 915 (5th Cir. 1973)("The Seventh Amendment requires that if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly."). See also Nance v. Gulf Oil Corp., 817 F.2d 1176, 1178 (5th Cir. 1987).

[6]  The County does not argue on appeal that the jury failed to find that racial discrimination was a sufficiently strong motive to satisfy 42 U.S.C. § 1983. We therefore do not address

6

racial discrimination only on the grounds of inadequate evidence. Our inquiry is limited to whether there is any evidence to support the jury's verdict under 42 U.S.C. § 1983. There is. The Commission took an unprecedented step in increasing, rather than decreasing or leaving intact, Steverson's punishment. The original sanction of Steverson stemmed from a racial conflict and, the jury concluded, race played a part in the Sheriff's and then the Commission's decision to affirm it. Steverson can recover for the harm he suffered because of the Commission's actions. We need not decide more.

The County also argues that the district court erred by applying retroactively the 1991 Amendments to the Civil Rights Act, and by allowing Steverson to proceed under 42 U.S.C. §§ 1981 and 1983 on his claim of retaliation for his Title VII class action suit. We need not address these assertions because, regardless of their merit, the jury's findings require affirmance.[7] Klevenhagen acknowledged that he was aware that Steverson backed Klevenhagen's opponent, J.C. Mosier, in the race for Sheriff of Harris County. Klevenhagen was present at a meeting that Steverson attended in

the issue.

[7] But see Landgraf v. USI Film Products, 114 S. Ct. 1483 (1994) (holding that 1991 Civil Rights Act jury trial and compensatory damages provisions do not apply retroactively); Irby v. Sullivan, 737 F.2d 1418, 1429 (5th Cir. 1984) (holding that 42 U.S.C. § 1983 does not provide claim based on retaliation against party for suit under Title VII, but that 42 U.S.C. § 1981 does); Carter v. South Cent. Bell, 912 F.2d 832, 840-41 (5th Cir. 1990), cert. denied, 111 S.Ct. 2916 (1991) (interpreting Patterson v. McLean Credit Union, 491 U.S. 164, 179-80 (1989) to foreclose claim under 42 U.S.C. § 1981 for retaliation in response to suit under Title VII).

support of Mosier. Five days after Steverson spoke on a local radio show on behalf of Mosier, Steverson received an undesirable work assignment. Steverson testified that Klevenhagen was responsible for the assignment. There was some evidence to support the jury's finding that Klevenhagen retaliated against Steverson for political activity. This finding together with the jury's determination that racial animus was a motive for the Commission's and Sheriff Klevenhagen's actions support the jury's verdict.

The County next contends that the district court erred in holding it liable for Klevenhagen's actions.[8] The County argues that Klevenhagen lacked final policymaking authority and that the punishment he meted out to Steverson, based on race and in retaliation for Steverson's First Amendment activities, cannot result in its liability. The County concludes that Klevenhagen's "actions cannot be imputed to the County because he is not the final decision maker and because of the Commission's subsequent actions in reviewing the discipline."[9]

The jury found that an unconstitutional consideration informed the County's decision to suspend Steverson for a total of ten days. We refuse to parse this decision into affirmance of the three-day suspension that Steverson originally received on an

---

[8]  The County does not contest its liability for the Commission's actions.

[9]  The focus of the County's appeal on this point is unclear.  Because the County refers to the Commission's review of the sheriff's actions, we interpret the County as objecting to liability for affirming the sanctions against Steverson that the Sheriff's Department imposed.

unconstitutional basis and that the County affirmed, and the County's decision that a ten-day suspension was more appropriate. Discretion lay with the County whether and how to sanction Steverson. The jury and judge found that race played a part in the County's exercise of its discretion. The County is liable.

Finally, the County seizes on the finding that the sheriff's policy of disciplining black employees more severely than white employees was not a moving force in the violation of Steverson's constitutional rights. The County objects that the district court nevertheless found disparate treatment, relying in part on an incident involving a white deputy who, after slapping a black sergeant, received no sanction comparable to Steverson's. The quick answer is that the jury's determination that racial animus motivated the County's suspension of Steverson supports the judgment. The district court prudently added its own findings. Although ultimately such additional findings may prove to be unnecessary, it is wise to make them when simultaneously trying jury and nonjury claims.

IV.

Steverson argues by cross-appeal that the court should have instructed the jury to consider the personal liability of Klevenhagen and other individuals on his staff for their discriminatory and retaliatory acts. The district court held that Klevenhagen and the other named defendants were not individually liable because they were entitled to immunity as policymakers. At oral argument, Steverson waived this claim, should we affirm the

9

judgment against the County.[10]  We dismiss the cross-appeal on Steverson's motion.

AFFIRMED.

---

[10]  We note that a sheriff's decisions, even policy decisions, are entitled only to qualified immunity.  See, e.g., Colle v. Brazos County, 981 F.2d 237, 246 (5th Cir.1993).  This is so even where the sheriff's actions are attributable to a county because the sheriff is considered a final policymaker. Id. at 244.