**Dorsey WILLIAMS, Plaintiff,**

v.

**CARRIER CORPORATION, Defendant.**

**No. 3:93–cv–54(DF).**

United States District Court,
M.D. Georgia,
Athens Division.

June 30, 1995.

Janet Elizabeth Hill, Joseph Calhoun Nelson, III, Joel N. Shiver, Athens, GA, for plaintiff Dorsey Williams.

Annette E. Ball, Robert E. Rigrish, Atlanta, GA, for defendant Carrier Corp.

FITZPATRICK, Chief Judge.

Before the court is Defendant's motion for summary judgment. Plaintiff brought this case alleging intentional race discrimination, retaliation, and a hostile work environment pursuant to 42 U.S.C. § 1981.

## FACTS

Plaintiff began his employment with Defendant Carrier Corporation on October 26, 1987. He held various positions at Carrier before his termination on December 13, 1991. Plaintiff is a black male who voiced concerns about racial discrimination while he worked at Carrier. Three significant events ultimately led to his termination: On July 17, 1991, he engaged in an altercation with a white employee; in September 1991 he was reprimanded for an alleged alcohol problem; and on December 13, 1991, he was reported as returning late from lunch. Plaintiff disputes that he committed each of these infractions. He alleges that he was disciplined and ultimately terminated based on artificial offenses that were manufactured as acts of retaliation.

## CONCLUSIONS OF LAW

I. *Retaliation Claim Under 42 U.S.C. § 1981*

Plaintiff asserts that he was discharged in retaliation for opposing discriminatory hiring and promotion practices and for complaining about racial graffiti. The Supreme Court has determined that the amendment to § 1981 enacted by the Civil Rights Act of 1991 does not apply retroactively to acts which occurred prior to November 21, 1991. *Rivers v. Roadway Express, Inc.,* —— U.S. ——, —— — ——, 114 S.Ct. 1510, 1519–20, 128 L.Ed.2d 274 (1994). Prior to its expansion in 1991, § 1981 afforded no redress for retaliating against an employee who complained about racial discrimination. *Patterson v. McLean Credit Union,* 491 U.S. 164, 176, 109 S.Ct. 2363, 2372, 105 L.Ed.2d 132 (1989).

 Few courts have considered whether § 1981 as amended encompasses a claim for retaliation. Without directly addressing the issue, the Fifth Circuit affirmed a jury verdict finding retaliation brought pursuant to 42 U.S.C. §§ 1981 and 1983. *Steverson v. Goldstein,* 24 F.3d 666, 670 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). Similarly, The United States District Court for the District of Columbia found a retaliation claim under § 1981

and further held that the analysis for a retaliation claim brought pursuant to § 1981 mimics the analysis of a Title VII claim. *Lewis v. American Foreign Service Ass'n,* 846 F.Supp. 71, 73 (D.D.C.1994).

The legislative history of the Civil Rights Act of 1991 lends further support that § 1981 was amended with the intention of reversing the *Patterson* decision. 137 Cong.Rec. § 15233. The Supreme Court acknowledged that the amendment was a responsive disapproval of *Patterson's* interpretation of § 1981. *Rivers,* —— U.S. at ——, 114 S.Ct. at 1516. Now § 1981 applies to "all phases and incidents of the contractual relationship, including discriminatory contract terminations." *Rivers,* —— U.S. at ——, 114 S.Ct. at 1514. Considering these sources together, this court must conclude that a retaliatory discharge claim is cognizable under § 1981 as it presently exists.

■ Plaintiff's case is particularly peculiar because the alleged protected activity occurred prior to November 21, 1991, but his discharge occurred approximately three weeks later on December 14, 1991. The court must resolve how to apply § 1981 to the factual sequence of this case, which straddles the effective date of the amendment. The only guidance is in the language used by the Supreme Court in discussing the retroactive application of a substantive change in the law. The court stated that the Civil Rights Act of 1991 would not apply to cases "arising before its enactment." *Landgraf v. USI Film Products,* —— U.S. ——, ——, 114 S.Ct. 1483, 1508, 128 L.Ed.2d 229 (1994).

A cause of action for retaliation cannot arise until the adverse employment action has been suffered. Even though certain events relevant to Plaintiff's claim occurred prior to November 21, 1995, his discharge took place on December 13, 1991, and therefore his action accrued at that time. The court can find no considerations of unfairness or lack of notice to Defendant since the only conduct by Defendant with legal significance occurred after the change of law. The Defendant also had the benefit of knowledge that a retaliatory firing was illegal under Title VII even before the enactment of § 1981(b). For the reasons stated in Section III below, the court must agree with Plaintiff that he has at least created an issue of fact as to whether he was retaliated against for opposing discriminatory employment practices and racial epithets in the workplace.

## II. *Promotion and Hostile Environment Claims*

■ Plaintiff filed this lawsuit on July 13, 1993, so any promotion claim he asserts must have arisen between July 13, 1991, and his termination on December 14, 1991. In his deposition, Plaintiff identified several positions for which he applied in 1989 and 1990. However, he has been unable to pinpoint a promotion opportunity that he was denied since July 13, 1991. Defendant's records show no application for promotion by Plaintiff during the period. Plaintiff's assertion in his affidavit that he sought promotion opportunities is conclusory in nature, and actually contradicts his prior deposition testimony. Accordingly, no genuine issue of fact exists from which a jury could find in Plaintiff's favor on the promotion claim.

■ Prior to its modification in 1991, a hostile environment claim was not actionable under § 1981. *Vance v. Southern Bell Tel. & Tel. Co.,* 983 F.2d 1573, 1576 (11th Cir.1993). The court agrees with Plaintiff that postenactment conduct is actionable under this theory for the portion of events that occurred after November 21, 1991. Thus, the issue is whether Plaintiff has presented a hostile environment claim based on events occurring between November 21, 1991, and December 14, 1991.

■ A hostile work environment must be sufficiently pervasive to alter the conditions of employment and create an abusive working environment. *Edwards v. Wallace Comm. College,* 49 F.3d 1517, 1521 (11th Cir.1995). The court must consider the totality of the circumstances, considering the frequency and gravity of the harassing incidents. *Id.* at 1521–22. Plaintiff has not specifically identified any event that occurred during this brief time that would create a hostile work environment. In his interrogatories, he has made general allegations that

racial graffiti and slurs permeated the workplace throughout his tenure at Carrier. Otherwise, the only evidence of a hostile work environment is Plaintiff's conclusory allegation that "a racially hostile atmosphere existed up to the time my employment was terminated." (Aff. at ¶ 23). Since Plaintiff is unable to point to any particular incidents or remarks during his last three weeks at Carrier, the court must conclude that he cannot make out a prima facie case premised on a hostile work environment.

### III. *Intentional Race Discrimination*

#### A. Disparate Treatment

■ To establish a prima facie case of racial bias in the application of discipline for violating work rules, a plaintiff must show that either (1) he did not violate the work rule, or (2) he engaged in misconduct similar to someone outside the protected group who was disciplined less severely. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir.1989).

■ In this case, Plaintiff alleges that his termination was predicated on fabricated incidents of misconduct and on discipline that was applied disparately. He alleges this was done as an intentional act of retaliation because he was perceived as a troublemaker for complaining about racial discrimination in the workplace.

Plaintiff has presented evidence of disparate treatment from which a trier of fact could determine he was the victim of intentional discrimination. Plaintiff was put on twelve month final warning for an altercation that occurred on July 17, 1991. This incident presents a question of fact as to why Plaintiff was disciplined when the white employee involved in the conflict was not. Plaintiff contends that he did not behave inappropriately. At least one witness perceived the white employee as the aggressor in the confrontation. (Mitchell Aff. at ¶ 4.) She also felt she had no choice but to consent to the discipline chosen for Plaintiff. (Mitchell Aff. at ¶ 5).

In addition, the court cannot say that no dispute exists as to the reasons for the final warning Plaintiff received on September 27, 1991. The disciplinary letter indicates that he was accused of having an alcohol problem.

Yet, Mr. Martin's declaration alluded that "it was reported" that Plaintiff was tardy on September 21, 1991. (Martin Decl. at ¶ 7.) Plaintiff denies both allegations and the contradictory explanations raise an inference of pretext.

In addition, an issue of fact exists as to the reasons for Plaintiff's termination on December 13, 1991. Some discrepancy exists since Plaintiff denies being tardy and Mr. Martin has no firsthand knowledge of the alleged tardiness. Plaintiff was punished for failing to document his tardiness yet the usual procedure of having employees log in when they are late was not used. (Brown Aff. at ¶ 4).

Finally, Defendant offers the case of Gloria Smith to rebut the inference that similarly situated white employees were disciplined less severely. However, the court views the facts of her case quite differently from the facts of Plaintiff's case. Ms. Smith submitted false medical records to justify an absence from work. Plaintiff was punished for failing to document his tardy return from lunch which he denies occurred. It is undisputed that Plaintiff complained of conditions at Carrier and was being scrutinized more carefully than other employees. For these reasons, summary judgment is inappropriate on the issue of intentional discrimination in the disparate application of discipline.

#### B. Termination

■ Plaintiff cannot make out a prima facie case of discriminatory firing because he was replaced by a minority employee. Plaintiff asserts that replacement decisions were made based on a seniority system This fact alone implies that Defendant used a nondiscriminatory system for filling vacant positions. Accordingly, Plaintiff has not created an inference that his termination was discriminatory. This ruling does not defeat Plaintiff's case since the heart of Plaintiff's allegations are that he was treated more harshly than white coworkers and that his termination resulted from a culmination of disciplinary manipulations. He will be entitled to present his case of retaliation and disparate disciplinary treatment.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is hereby **GRANTED** as to Plaintiff's promotion, hostile work environment, and discriminatory termination claims. The motion is hereby **DENIED** as to Plaintiff's claims of retaliation, intentional discrimination in his disciplinary treatment and on the issues of damages and overpayment.

SO ORDERED.