Marion T. DuBOSE, Plaintiff,

v.

The BOEING COMPANY, Defendant.

Civ. A. No. 94–2369–GLR.

United States District Court,
D. Kansas.

Nov. 3, 1995.

Dennis E. Egan, The Popham Law Firm, Kansas City, MO, Bobbie R. Bailey, Kansas City, MO, for plaintiff Marion T. DuBose.

Mikel L. Stout, Trisha A. Thelen, Foulston & Siefkin, Wichita, KS, for defendant Boeing Company.

*MEMORANDUM AND ORDER*

RUSHFELT, United States Magistrate Judge.

The above-captioned case came on for trial by jury on the 10th day of July 1995. The parties presented evidence upon the claims of plaintiff for damages for alleged race discrimination and retaliation, pursuant to Title VII and 42 U.S.C. § 1981. On July 28, 1995, the jury returned its Special Verdict. It found for defendant and against plaintiff upon his claim of race discrimination. It found for plaintiff and against defendant upon his claim for retaliation. The jury found plaintiff entitled to actual damages as follows:

| | | |
|---|---|---|
| a. | Loss of past earnings and employment benefits: | $ 97,705 |
| b. | Loss of future earnings and employment benefits: | $509,000 |
| c. | Other compensatory damages: | $ 93,295 |
| | Total actual damages (total of a, b, & c above): | $700,000. |

The court withheld entry of judgment, pending determination of any equitable relief to be allowed, such as reinstatement of plaintiff to employment with defendant or alternatively for front pay. As directed, the parties have submitted proposed findings of fact and conclusions of law. They have also submitted additional evidence upon the issue of reinstatement.

In support of Plaintiff's Proposed Findings of Fact and Conclusions of Law, plaintiff has submitted his own affidavit (doc. 85, Ex. Attachment to Ex. B). He thereby opposes his reinstatement. He requests the court instead award him future pay of $509,000, as shown by the verdict. Defendant, on the other hand, has filed a Motion to Order Reinstatement in Lieu of Front Pay (doc. 86). It has also filed a Motion To Strike Affidavit of Marion T. DuBose (doc. 89). In reply, plaintiff has filed Plaintiff's Motion to Strike the Moving Papers of Defendant Boeing (doc. 91).

On October 13, 1995, the court conducted a telephone conference with counsel. This served to determine the need for further hearing or evidence additional to that already submitted upon the issue of reinstatement.

At that time the court ruled that it would consider the additional evidence which the parties had submitted. This includes the affidavit of plaintiff and the documents attached as Exhibits A and B to the Motion to Order Reinstatement in Lieu of Front Pay (doc. 86). The court also indicated it would consider the arguments asserted by each party against these additional items of evidence. With that understanding plaintiff and defendant both waived the right to any further hearing, evidentiary or otherwise, upon the issue of reinstatement. They agreed that this issue be determined, therefore, upon the trial record thus supplemented by the additional affidavit and exhibits. The court consequently finds no occasion to strike anything.

From the evidence and additional exhibits, therefore, the court makes the following findings of fact and conclusions of law for the purpose of determining the issue of reinstatement and the nature of the judgment to be entered:

### I. FINDINGS OF FACT

1. Plaintiff requests judgment upon the jury verdict, including the award of $509,000 for loss of future earnings and benefits, in lieu of reinstatement. Affidavit of Marion T. DuBose, attached to Plaintiff's Materials Submitted in Support of Proposed Findings of Fact and Conclusions of Law (doc. 85).

2. Defendant asks, in lieu of an award of front pay to plaintiff, that he be reinstated in a position comparable to his employment at termination, i.e. either as a Facilities Equipment Designer I, serving as a procurement specialist for transportation equipment, or as an Acquisition Planner II, with a salary in either position of $47,850. Motion to Order Reinstatement in Lieu of Front Pay (doc. 86).

3. The Pretrial Order reflects that plaintiff seeks pecuniary damages, including loss of wages and benefits, under Title VII and 42 U.S.C.

§ 1981, without any request for reinstatement or other equitable relief. Pretrial Order (doc. 45, § 4.0).

4. Plaintiff was employed with defendant from an effective service date of February 10, 1975, until his termination on October 26, 1993. Defendant's Exhibit 404; testimony of plaintiff.

5. The last position which plaintiff held with defendant was Facilities Equipment Designer I in the Facilities Equipment Engineering Department. Defendant's Exhibit 404.

6. Plaintiff intended to work with defendant until age 65. Testimony of plaintiff.

7. For purposes of identifying its employees for retention or layoff, defendant rated them numerically and automatically applied a more favorable rating to those with twenty or more years of service. Defendant's Exhibit 422; plaintiff's Exhibit 70.

8. The NSP Surplus Guidelines (BDU 1013) of defendant reflect the value of its long-term employees and the obligation of its management to protect them in planning its layoffs. Testimony of Shari McConico.

9. Defendant performs retention exercises annually by "skill teams" to determine in what order its employees should be laid off. Testimony of Charles Thomas.

10. When defendant applies its guidelines to rate and rank its employees for retention in their employment, the length of their company service constitutes the only objective factor; other factors, such as job performance and versatility, are subjective. Testimony of Ron Brunton.

11. Had plaintiff continued to work for defendant and not been terminated, he would have performed twenty years of service by February 17, 1995; by application of its policy and guidelines, his rating would then have automatically changed and strengthened the likelihood of his retention against future layoffs and to exempt him from the lowest rating (R3). Testimony of plaintiff.

12. Security investigators for defendant had characterized plaintiff as the type of individual they should watch, because he appeared to live beyond his means. Testimony of Michael Kohn.

13. Daily conflict existed between plaintiff and his last supervisor Chuck Thomas, including verbal, irritating remarks and often slighted reactions by Thomas, not expressed toward white employees. Testimony of Willie Albert.

14. In submitting to defendant for payment a travel voucher which included a hotel bill of $56.50, plaintiff did not intend to claim anything he had not paid; however, he thought that he had personally guaranteed the item and that his credit-card account could be charged for such additional expense, resulting from alternative hotel arrangements necessitated by the loss of an earlier reservation. Testimony of plaintiff.

15. During the security investigation of plaintiff's travel voucher in 1993, defendant's supervisor Gary Shaw exclaimed of plaintiff, "We finally got the son of a bitch." Testimony of Michael Kohn.

16. As a result of a Corrective Action Memo (CAM), relating to his expense voucher, defendant suspended plaintiff from employment for one day. Plaintiff's Exhibits 13 and 419.

17. A Corrective Action Memo (CAM) reflects the conclusion by defendant that the employee in question has acted falsely, dishonestly, or fraudulently against it, rather than mistakenly. Testimony of Ron Brunton and Richard Raider.

18. A Corrective Action Memo (CAM) to an employee can affect his retention rating with defendant. Testimony of Richard Raider.

19. A Corrective Action Memo (CAM) in his record creates a difficulty for plaintiff to transfer his employment to another department of defendant. Testimony of Sherri Boyer.

20. When plaintiff filed a formal complaint of discrimination against defendant, Shari McConico said that he should never have received the suspension for his travel voucher. Testimony of plaintiff.

21. On August 9, 1993, plaintiff received from defendant a notice of his retention rating as R3, indicating he would probably receive a notice of layoff. Testimony of plaintiff; defendant's Exhibit 428.

22. On August 26 or 27, 1993, plaintiff received from defendant a "WARN" notice of his prospective layoff from employment. Testimony of plaintiff; defendant's Exhibit 429.

23. Management personnel of defendant should try to help to place its long-term employees in other positions, before terminating them. Testimony of Ron Brunton.

24. Although defendant assisted plaintiff in searching for employment with some other employer, it made no effort to transfer him to another job with defendant as an alternative to his layoff. Testimony of plaintiff.

25. After receiving a 14–day layoff notice from defendant on October 13, 1993, plaintiff asked his supervisor about opportunities for jobs in other departments; his supervisor said he knew of none and offered no help to find any. Testimony of plaintiff; defendant's Exhibit 483.

26. On August 9, 1993, in response to the inquiry of plaintiff about any other job openings and the possibility of a change of his retention rating to avoid layoff, his supervisor replied there was nothing he could do. Plaintiff's Exhibit 27; testimony of plaintiff.

27. After plaintiff on October 13, 1993, received the 14–day notice of termination of his employment, his supervisor again told him there were no other openings and refused his request to extend the date of termination; although at least one other employee in his department was granted such an extension. Testimony of plaintiff.

28. Plaintiff, as one of seven equipment engineers with the same retention rating, was laid off on October 26, 1993; although defendant, after giving all of them similar notices of layoffs, had then accommodated the other six to avoid their layoffs. Testimony of Om Tandom; Defendant's Exhibit 403.

29. On his last day of employment with defendant plaintiff completed a recall form. Defendant's Exhibit 483.

30. After his layoff plaintiff sought employment and worked for several employers: for six weeks in June and July 1994 with Best Western Reserve Center; for about two months in late 1994 with Startek Plastics Company at $6 per hour; from approximately December 10, 1994, through May 23, 1995, with the U.S. Postal Service for $7 per hour, no benefits, and a maximum work week of 30 hours; and self-employment as a lawn service which grossed $1,200 every two weeks. Testimony of plaintiff.

31. The expert opinion of an economist shows that the discounted value of future lost income for plaintiff to age 65 from his employment with defendant is $795,366; reduced by mitigating factors, such as other earnings, his prospective loss will be a minimum of $322,606 and a maximum of $691,003. Testimony of Dr. John Ward.

32. From 1990 through 1994 defendant down-scaled itself for lack of sales, and its business activity has continued to decline for lack of sales; it expects to lay off four or five more engineers within the next one and

one-half years. Testimony of Charles Thomas.

33. Since January 1993 about one-half the employees in the equipment engineering department, where plaintiff was employed for defendant, have survived layoffs. Testimony of Charles Thomas; Exhibit 403.

34. Since terminating plaintiff, defendant has continued to lay off employees, particularly equipment engineers like defendant; and it contemplates additional layoffs of 30 more employees in 1995 and 260 in 1996, including five to ten equipment engineers. Testimony of Sherri Boyer.

35. For the foregoing reasons, were plaintiff reinstated, the employment relationship between him and defendant would probably remain cold, strained, tense, unfriendly, mutually distrustful, hostile, and lacking the kind of open and candid communications conducive to good working relationships between employees and management.

36. For the foregoing reasons, and particularly in view of the likelihood of future layoffs by defendant, the subjective nature of its retention rating procedures to rank its employees, and what appears from the demeanor and testimony of its supervisory personnel as an institutional preference to exclude plaintiff from its work force, he would enjoy little job security upon any reinstatement and substantially less than he should have enjoyed had he not been terminated.

37. For the foregoing reasons and particularly in view of the demonstrated lack of institutional concern or ability of defendant to accommodate the needs of plaintiff for other employment, notwithstanding his service of over eighteen years, any future employment of plaintiff by defendant would be more vulnerable to another subsequent layoff with little prospect for comparable substitute employment.

## II. CONCLUSIONS OF LAW

The request for equitable relief in the form of reinstatement of plaintiff to his employment addresses the discretion of the court under either Title VII or 42 U.S.C. § 1981. *EEOC v. General Lines, Inc.,* 865 F.2d 1555, 1560–61 (10th Cir.1989) (Title VII); *Whatley v. Skaggs Cos.,* 707 F.2d 1129, 1137 (10th Cir.) (Title VII and § 1981), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). From the facts in this case the court concludes that equity neither requires nor favors reinstatement. In view of the several denials of relief from layoff or of significant help to find other work, notwithstanding such assistance to other employees in similar circumstances, the court believes it would be turning equity on its head to order plaintiff against his will to return to a working environment as unfriendly to him as the evidence in this case has shown.

Defendant argues that reinstatement is the preferred remedy, rather than front pay, in employment discrimination cases. In the cited cases, however, the plaintiffs have generally sought reinstatement, not the defendants. To order reinstatement at the request of a prevailing employee serves a purpose of Title VII and § 1981 to protect his or her employment against discriminatory or retaliatory termination. The court finds nothing to suggest that this statutory purpose would be subserved, however, by requiring an unwanted employee to return to work against his wish. The court may decline to award front pay for a prevailing employee who without good reason is unwilling to return to work. The court does not find that to be the case here. Plaintiff was willing to continue his employment with defendant and before his termination indeed hoped to do so. His relationship with his employer through mid–1993, while not ideal, was at least tolerable to both of them. The trial testimony of many witnesses, both plaintiff and defendant, however, point persuasively to a mutual distrust, disrespect, and bitterness which now promise little if any hope for a healthy working relationship were reinstatement ordered.

■ The court finds that the verdict of the jury should be approved and judgment entered accordingly. Plaintiff pursued his claims under both Title VII and § 1981. The court finds the verdict of the jury conclusive on the factual issues of liability and damages under both § 1981 and Title VII. The Seventh Amendment to the United States Constitution requires such a finding. *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 412 (10th Cir.1993); *Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1442–1445 (10th Cir.1988). The factual bases which support the jury findings of retaliation and monetary relief in this case are the same under both Title VII and § 1981. As this order will elsewhere note, these two sections differ as to the available monetary relief. That raises a matter of law, however, which the court determines after the jury verdict.

Inasmuch as the retaliation by defendant against plaintiff occurred in 1993, 42 U.S.C. § 1981a controls this case. It provides that a complaining party in an action for unlawful intentional discrimination may recover compensatory damages (subject to statutory limitations) "provided that the complaining party cannot recover under section 1981...." Subsection 1981a(b)(2) excludes from compensatory damages back pay, interest on back pay, and other equitable relief and leaves these items as equitable relief still available under Title VII.

■ Section 1981a(b)(4) further provides that, "Nothing in this section shall be construed to limit the scope of, or the relief available under, section 1981 of this title." In this case plaintiff has the right to a recovery under section 1981. The court will enter judgment, consequently, upon the § 1981 claim in the amount of $700,000, representing the total damages shown by the jury verdict. Such judgment also includes recovery upon the claim under Title VII to the extent of monetary relief of $97,705, the amount of the verdict for lost past earnings and employment benefits. The court will not enter judgment under Title VII for the remainder of the verdict; inasmuch as § 1981a(a)(1) appears to restrict recovery for future lost income and other compensatory damages to the claim under § 1981.

■ Defendant suggests that the court should reduce the amount of back pay in several ways: by the amount of unemployment compensation and income plaintiff received from other employers and sources; and by the amount of income taxes withheld from any recovery of back wages. The court agrees with the proposition that an award of back pay is subject to mitigation by whatever amounts plaintiff earned or reasonably could have earned during the relevant period of loss. In this case the court submitted the entire issue of lost income and mitigation to the jury. The parties presented their evidence to the jury. The evidence included testimony as to the earnings of plaintiff and his efforts to seek employment after his termination with defendant. In his calculation of lost income, Dr. John Ward testified as an expert witness that he considered the mitigating factors. The court instructed the jury on the issue of lost wages, both past and future. See Instruction No. 20. It also instructed the jury to mitigate such damages "by (1) what the plaintiff earned and (2) what the plaintiff could have earned by reasonable effort during the period from his termination until the date of trial." Instruction No. 21. The court must assume, therefore, that the jury verdict of $97,705 already includes consideration of the mitigating factors which defendant now raises. It cannot impose mitigation twice.

■ The parties did not address the question of income taxes and their impact upon the recovery for back wages. Like the issue of mitigation, if defendant wanted the amount of any verdict and judgment reduced by income taxes, it should have offered relevant evidence at trial and proffered an appropriate jury instruction. The recovery of back wages may indeed be subject to income taxes to be paid by plaintiff to the United States or the State of Kansas, or both. The court makes no determination of that question. It does not find that issue before it in this case. If plaintiff owes income tax upon the recovery, then presumably he will pay it. That remains a matter between him and the taxing jurisdictions.

 To what extent the court must enter judgment under Title VII appears to be a more academic than practical question. As a practical matter it adds nothing to the recovery by plaintiff under § 1981. Under either statute, furthermore, the court will order prejudgment interest upon that part of the judgment which represents back pay or lost past earnings and benefits. *Whatley,* 707 F.2d at 1140; *Williamson v. Handy Button Mach. Co.,* 817 F.2d 1290, 1297–98 (7th Cir.1987); *Hunter v. Allis–Chalmers Corp.,* 797 F.2d 1417, 1425–27 (7th Cir.1986).

Plaintiff has proposed prejudgment interest of ten per cent. This represents the Kansas statutory rate. K.S.A. 16–201. District Judge O'Connor of this Court has awarded prejudgment interest at this rate upon an award of back pay upon a claim under the Veterans Free Employment Rights Act. He found this accorded with "the principle of making whole the plaintiff." *Sawyer v. Swift & Co.,* 610 F.Supp. 38, 43 (D.Kan.1985), *rev'd on other grounds,* 836 F.2d 1257 (10th Cir.1988). Defendant has not opposed the statutory rate as applicable. Accordingly, the court finds that plaintiff should recover prejudgment simple interest at the rate of ten per cent per year upon that part of the judgment which represents lost back pay and benefits, i.e. $97,705, from the date of the termination of employment, October 26, 1993. Through the date of this judgment, November 3, 1995, the amount of prejudgment interest, therefore, totals $19,755.16.

 Plaintiff also requests an award of statutory attorneys fees. The court finds he is entitled to such an award. In addition to his earlier submission plaintiff has filed a supplemental request for attorneys fees and expenses. Defendant has opposed the supplemental request. In view of the findings set forth in this order, however, the court refers the parties to D.Kan.Rule 54.2 (formerly 220). If counsel cannot reach an agreement, they should file the statement of consultation and any supplement or further response to the supplemental submission.

Consistent with the foregoing findings, the court enters the following orders: It overrules these motions: Motion to Order Reinstatement in Lieu of Front Pay (doc. 86); Motion to Strike Affidavit of Marion T. DuBose (doc. 89); Plaintiff's Motion to Strike the Moving Papers of Defendant Boeing (doc. 91). The court directs entry of judgment upon the jury verdict for damages in the total amount of $700,000 forthwith upon the claims of plaintiff against defendant, pursuant to 42 U.S.C. § 1981. This amount includes as well the award of back pay and benefits of $97,705, allowable under Title VII. The court also awards prejudgment interest at the statutory rate of ten per cent per year for the period from October 26, 1993, through November 3, 1995, upon the award for back pay and benefits. It thus directs the entry of judgment to include an award of prejudgment interest in the total amount of $19,755.16. The court defers its entry of an award of attorneys fees, pending further responses of the parties as herein directed.

IT IS SO ORDERED.