Leslie ADAMS, Plaintiff,

v.

CITY OF CHICAGO, Defendant.

No. 94 C 2847.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 22, 1994.

Judith A. M. Scully, Chicago, IL, for plaintiff.

Susan S. Sher, City of Chicago, Law Dept., Corp. Counsel, Maureen N. Egan, Barbara L. Anderson, City of Chicago, Law Dept., Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CONLON, District Judge.

Leslie Adams sues the City of Chicago ("City") for racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and section 1981 of the Civil Rights Act of 1871, 42 U.S.C. § 1981, as amended. The City moves to dismiss Count II and all prayers for punitive damages under Fed.R.Civ.P. 12(b)(6).[1]

### BACKGROUND

For the purposes of this motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th

---

1. Adams has not responded to the City's motion. Adams' response was due originally on July 27, 1994. On August 3, 1994, the court granted Adams' counsel an extension of time until August 12, 1994, but no response has been filed.

Cir.1992). Adams is an African–American male who is employed as a firefighter for the City. In January 1992, the City issued Adams a nine-day suspension for "mess[ing] up the cloak room" and "mak[ing] obscene gestures." No white firefighters have ever been suspended for like charges, and Adams believes he was disciplined because of his race.

Adams filed a claim with the Equal Employment Opportunity Commission ("EEOC") on April 22, 1992. Since the filing, Adams claims he has been subjected to continuous harassment and unequal treatment. For example, Adams was reprimanded in June 1992 for being "disrespectful" although his disrespectful conduct was performed according to a supervisor's instructions. Similarly, Adams' immediate supervisor spoke to him in a "rude, abusive, and loud voice" in October and November of 1992. In addition, Adams was forced to display his knowledge of four firefighter general orders and was transferred from Truck 26 to Tower Ladder 14 allegedly in retaliation for the EEOC complaint. Finally, Adams's request for time off to appear in court was denied, but the identical requests of two white firefighters were granted. Adams has tried to alert his supervisors to these problems, but his complaints have fallen on deaf ears. Indeed, Adams claims that a letter he wrote to his superiors complaining of the disparate treatment was "torn up into little pieces" and placed in his locker. Adams seeks compensatory and punitive damages.

### DISCUSSION

The City moves to dismiss Count II and the prayers for punitive damages. Fed. R.Civ.P. 12(b)(6). A motion to dismiss is granted only if the facts alleged will not entitle Adams to judgment on the claim asserted under any circumstance. *See, e.g., Early v. Bankers Life & Casualty Co.,* 959 F.2d 75, 79 (7th Cir.1992). In considering the motion, the court accepts all well-pleaded facts as true and draws all inferences in favor of Adams, the nonmoving party. *See Bontkowski v. First Nat'l Bank,* 998 F.2d 459, 461 (7th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993).

### 1. *Count II: Section 1981*

In Count II, Adams charges the City with a section 1981 violation. *See* 42 U.S.C. § 1981. In particular, Adams alleges that the City harassed and retaliated against him for filing the EEOC claim and otherwise attempting to obtain redress for his disparate treatment. In order to state a claim under section 1981, a plaintiff must allege racial discrimination in his effort to "make and enforce contracts." The Civil Rights Act of 1991 defined this phrase to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Nevertheless, the City maintains that Adams' charges of harassment and retaliation fall outside the new definition. The City ignores the 1991 amendments. In support of its motion, the City cites *McKnight v. General Motors Corp.,* 908 F.2d 104 (7th Cir.1990) and *Buddingh v. South Chicago Cable,* 830 F.Supp. 437 (N.D.Ill.1993) for the proposition that a plaintiff must allege interference with his abilities to form a contract in order to state a claim under section 1981. Both *McKnight* and *Buddingh* draw their interpretation of section 1981 from *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). *See McKnight,* 908 F.2d at 108; *Buddingh,* 830 F.Supp. at 441. In *Patterson,* the Supreme Court held that postformation harassment and retaliation did not involve the right to "make" contracts, but rather implicated the performance of established contract obligations and the conditions of continuing employment. *Patterson,* 491 U.S. at 177, 109 S.Ct. at 2372–73. As a result, harassment and retaliation for attempts to enforce antidiscrimination laws were not cognizable under section 1981.

*Patterson* motivated Congress to amend section 1981. *See* H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 89 (1991), *reprinted in* 1991 U.S.C.C.A.N. 549, 627. The legislative history makes Congress' intent clear:

Section 210 would overrule *Patterson* by adding at the conclusion of section 1981 a

new subsection (b).... The Committee intends this provision to bar all race discrimination in contractual relations. The list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring.

H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 (1991), *reprinted in* U.S.C.C.A.N. 549, 630.

Moreover, Congress intended the new section 1981 to cover retaliation against an employee for filing an EEOC claim or enforcing any other antidiscrimination statute. *See* H.R.Rep. No. 40(I) at 92 n. 92, U.S.C.C.A.N. 1991, p. 630. The harassing and retaliatory conduct that Adams alleges occurred after November 21, 1991, the effective date of the amendments.[2] As a result, Adams states a claim under section 1981.

### 2. *Punitive Damages*

▪ Adams prays for punitive damages in both counts of his complaint. Municipalities are immune from punitive damages imposed under the civil rights laws. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981); *Bell v. Milwaukee*, 746 F.2d 1205, 1270 (7th Cir. 1984). Although this immunity may be waived by federal or state law, *Kolar v. County of Sangamon*, 756 F.2d 564, 567 (7th Cir.1985), Illinois has instead reaffirmed immunity for its local governments. *See* 745 ILCS 10/2–102. Adams' prayers for punitive damages are therefore stricken from the complaint.

### CONCLUSION

The City's motion to dismiss Count II for failure to state a claim is denied. The City is directed to answer Count II by September 6,

1994. The City's motion to strike Adams' prayers for punitive damages is granted.

---

**2.** The City points to *Buddingh* as a post-amendment case (1993) that refused to recognize a section 1981 claim for harassment and retaliation. A cursory reading of *Buddingh* disposes of this argument. Because the conduct in *Bud-*

*dingh* occurred before the effective date of the 1991 amendments, the court there was required to apply *Patterson* and other pre-amendment law to its facts. *Buddingh*, 830 F.Supp. at 441.