Dobson COLLINS, an individual, on behalf of himself and others similarly situated, Plaintiffs,

v.

EXECUTIVE AIRLINES, INC., a Delaware corporation d/b/a American Eagle Airlines, Inc., and Flagship Airlines, Inc., a Delaware corporation, Defendants.

No. 96–1104–CIV.

United States District Court, S.D. Florida.

July 29, 1996.

Ira Kurzban, Miami, FL, for Plaintiffs.

Terence G. Connor, Miami, FL, for Defendants.

### ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANTS' MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss Plaintiffs' Complaint or for Summary Judgment, or, Alternatively, to Limit Discovery to Issue of Class Certification, filed June 19, 1996. After requesting and receiving an extension of time, Plaintiff filed a response on July 9, 1996.

### I.  Factual Background

Plaintiff, an African American man, was employed by Defendant Flagship Airlines

("Flagship") as an airline mechanic.[1] Defendant Flagship operates American Eagle Airlines, Inc. ("American Eagle"). On December 12, 1994, Plaintiff was informed by letter that he had been terminated for insubordination. Plaintiff's termination brought closure to an apparently tumultuous relationship between the parties, particularly Plaintiff's supervisor, Noel Franz.

Plaintiff was hired in December 1989 as an aircraft mechanic. (Compl. ¶ 9.) In 1991, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant's failure to promote him was the result of racial discrimination. (Compl. ¶ 10.) The following year, the parties entered into a negotiated settlement, pursuant to which Plaintiff was promoted and awarded back pay. (Compl. ¶ 11; Compl.Ex. A.) Plaintiff filed a second charge of discrimination in May 1993, which charge was resolved nearly a year later, in March 1994. (Compl. ¶ 14.)

Two months later, on May 12, 1994, Plaintiff filed a third charge of discrimination with the EEOC, alleging that Mr. Franz had retaliated against him in a series of incidents beginning in April and continuing until the date of filing of the third charge. (Compl. ¶ 20; Compl.Ex. C.) That charge, and its amendment in December 1994, underlies the instant litigation. Plaintiff alleges that in October 1994, a noose with the words "To Hang Dobson" appeared on the mechanics' trailer. (Compl. ¶ 21.) Another alleged incident involved an overexposed picture purporting to represent Plaintiff and an African American colleague in blackface. (Compl. ¶ 22.)

On December 12, 1994, Plaintiff received written notice of his termination. (Compl. ¶ 25; Compl.Ex. D.) Approximately two weeks prior to his receipt of the termination later, Plaintiff and Mr. Franz were allegedly involved in a verbal and physical altercation. (Compl. ¶¶ 23–24.)

The gravamen of Plaintiff's Complaint is that Mr. Franz and others "have taken racially unfair and discriminatory actions against black mechanics and technicians." (Compl. ¶ 27.) Plaintiff seeks relief both for himself and for all others similarly situated. Specifically, the Complaint alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. (Count I), violations of 42 U.S.C. § 1981 (Count II), and class-wide claims for violations of both statutes (Count III).

## II. Analysis

### A. Count I: Title VII as to Dobson Collins

Defendant argues that Plaintiff's claim of racial discrimination, namely hostile work environment, is precluded because it exceeds the scope of the May 1994 EEOC charge. Moreover, Defendant argues, Plaintiff's claim for retaliation should be limited to those retaliatory acts specifically alleged in his most recent EEOC charge.

■ A Title VII complaint is limited to the scope of the EEOC investigation reasonably expected to grow out of the plaintiff's administrative charge. See Long v. State of Florida, 805 F.2d 1542, 1547 (11th Cir.1986). Thus, the inquiry here is whether Plaintiff's claim for hostile work environment is "like or related to" the allegations of retaliation contained in the 1994 EEOC charge. Henderson v. Hovnanian Enterprises, 884 F.Supp. 499, 502 (S.D.Fla.1995) (citing Mulhall v. Advance Security Inc., 19 F.3d 586, 589 n. 8 (11th Cir.1994)). The "like or related to" test serves a dual purpose: it provides the EEOC with an opportunity to investigate the allegations and to put the employer on notice, and it allows for conciliation of the dispute without need to resort to litigation. Evans v. U.S. Pipe & Foundry Co., 696 F.2d 925, 929 (11th Cir.1983).

■ Plaintiff urges the Court to approach his administrative allegations holistically by reading the 1994 charge in the context of the 1993 charge. The latter alleges both racial discrimination and retaliation. (Def.Mot.Ex. 4.) Plaintiff contends that the allegations in both charges form a continuous chain, sup-

---

1. Plaintiff does not object to dismissal of Defendant Executive Airlines, Inc., based on Defendant Flagship's representation that Plaintiff was never employed by Executive Airlines, Inc. The Court will refer to a single Defendant in the body of this Order.

ported primarily by the fact that the May 1994 charge and its December 1994 amendment are designated a "Continuing Action" in describing the temporal scope of the charge. (*See* Compl.Ex. C.; Def.Mot. Ex. 1.)

The narrative portion of the 1994 charge begins by recounting Plaintiff's filing of the May 1993 charge and its resolution in March 1994. It then details incidents that purportedly evince retaliatory animus by Mr. Franz. (*See* Compl.Ex. C.) In his concluding paragraph, Plaintiff writes that he was retaliated against for having alerted the EEOC to Title VII violations against him. (*See* Compl.Ex. C.) As Defendant is quick to emphasize, Plaintiff's narrative contains no explicit reference to racial discrimination apart from retaliatory behavior. Plaintiff's December 1994 amendment is similarly devoid of explicit allegations of racial harassment. (*See* Def. Mot. Ex. 1.) The amended charge does allege, however, that "[n]o other employee has been subjected to the adverse terms and conditions I have under similar conditions." (*See* Def.Mot. Ex. 1.)

█ The Court is mindful that "the remedial purposes of Title VII and the lack of legal training among those whom it is designed to protect" require the court to "construe an EEOC charge with the utmost liberality." *Wright v. Manatee County,* 717 F.Supp. 1493 (M.D.Fla.1989) (citing *Terrell v. U.S. Pipe & Foundry Co.,* 644 F.2d 1112, 1123 (5th Cir.1981)).

█ Logic dictates that a claim for racial or other discrimination may be reasonably related to a subsequent claim of retaliatory conduct based on the earlier charges of discrimination. *See Carter v. South Central Bell,* 912 F.2d 832, 841 (5th Cir.1990); *Gottlieb v. Tulane Univ. of La.,* 809 F.2d 278, 284 (5th Cir.1987). Although Plaintiff neglected to specify how the alleged racial harassment related to Defendant's retaliatory conduct, "[i]f the alleged harassing acts were part of a design to force the plaintiff out because of his prior charges ... a reasonable relation between the charge and the complaint exists...." *Aponte v. Nat'l Steel Serv. Ctr.,* 500 F.Supp. 198, 201 (N.D.Ill.1980).

Since at least May 1994, Defendant was on notice regarding the more recent problems between Plaintiff and Mr. Franz. (*See* Compl.Ex. C.) Discriminatory conduct, if it indeed takes place, does not exist in a vacuum. An internal investigation by Defendant, as well as an investigation by the EEOC, would have likely touched upon racial animus or discrimination whence the claim of retaliation evolved. Defendant cannot now claim that it was unaware of racial discrimination apart from the retaliation described by Plaintiff in his charge.

█ Defendant further argues that certain allegations made by Plaintiff are outside the scope of even the retaliation claim. Specifically, Defendant objects to Plaintiff's allegation regarding the noose with his name on it; the overexposed picture purporting to depict Plaintiff and an African American colleague in blackface; and the use of racial slurs at Defendant's workplace. The Court finds that these allegations are also reasonably related to Plaintiff's claim of hostile environment, and Plaintiff's failure to specifically allege them does not now eviscerate his claims.

Plaintiff cannot, of course, bring the claims or incidents that were resolved in March 1994 within the ambit of the instant suit. Count I of the Complaint shall otherwise remain in its entirety.

### B. Count II: Section 1981 as to Dobson Collins

█ In Count II, Plaintiff alleges that Defendant unlawfully discriminated against him on grounds of race and retaliated against him for his opposition thereto. Defendant contends that Section 1981's prohibition against discrimination in the "enjoyment of all benefits, privileges, terms and conditions of the contractual relationship" does not encompass retaliatory action. In 1991, Congress amended Section 1981 by addition of subsection (b): "For purposes of this section, the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Defendant concedes that while Section 1981 lacks an express prohibition against retaliation, several courts have relied on legislative history to find that Section 1981 provides redress for retaliatory conduct. *See, e.g., Steverson v. Goldstein,* 24 F.3d 666, 670 (5th Cir.1994); *Williams v. Carrier Corp.,* 889 F.Supp. 1528, 1530 (M.D.Ga.1995); *Adams v. City of Chicago,* 865 F.Supp. 445, 446–47 (N.D.Ill.1994). Defendant also acknowledges what it terms "tangential" references in the legislative history to retaliation claims, but urges the Court to look only to the plain language of the statute.

The legislatively conferred rights of nonwhite citizens would be greatly diminished by a myopic reading of the statute. Section 1981 was originally enacted to ensure that all Americans received the full panoply of contractual benefits and protections enjoyed by white citizens. In 1991, Congress extended such protections to post-formation conduct, thereby nullifying the effect of the Supreme Court's decision in *Patterson v. McLean Credit Union,* 491 U.S. 164, 171, 109 S.Ct. 2363, 2369–70, 105 L.Ed.2d 132 (1989). The Court finds that a prohibition on retaliatory conduct is consistent with Congress's mandate that "modification" and "termination" of contracts are encompassed by the statute. 42 U.S.C. § 1981(b). A retaliatory firing, demotion, or other adverse employment action could certainly constitute a "termination" and "modification."

Plaintiff is therefore within his rights in asserting his claims under Section 1981. Count II shall stand in its entirety.

### C. Count III: Class Action Claims

Plaintiff's claims under Title VII and Section 1981 are reprised as class action claims in Count III. Defendant contends that the class-wide allegations fail to comply with Federal Rule of Civil Procedure 23. Specifically, Defendant argues that Plaintiff merely asserts that he has met the prerequisites of Rule 23(a) without setting forth factual allegations that bridge the gap between the individual and class claims.

The Court need not address the merits of Defendant's Rule 23 argument. It is

persuaded instead by Defendant's more general argument that a class action is outside the scope of Plaintiff's EEOC charge. The May 1994 charge relates unequivocally to the problems allegedly encountered by Plaintiff. (*See* Compl.Ex. C.) Moreover, Plaintiff explicitly complains in the December amendment that "[n]o other employee has been subjected to the adverse terms and conditions I have under similar conditions." (Def.Mot.Ex. 1.)

The Court has found it reasonable that Defendant would have been on notice and potentially liable for a range of discriminatory conduct broader than that explicitly alleged by Plaintiff in his 1994 charge. It cannot, however, transpose that reasoning to link Defendant's liability herein, as well as the procedural nature of the case, to the charges filed by a single employee. Defendant is entitled to dismissal of Count III.

### III. Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss Plaintiffs' Complaint or for Summary Judgment, or, Alternatively, to Limit Discovery to Issue of Class Certification, treated as a motion to dismiss be, and the same is hereby, GRANTED IN PART and DENIED IN PART.

As to Counts I and II, the motion to dismiss is DENIED and those Counts remain in their entirety. As to Count III, the motion to dismiss is GRANTED and that Count DISMISSED. It is

FURTHER ORDERED and ADJUDGED that Defendant Flagship shall have twenty days from the date of this Order to answer Plaintiff's claim for race discrimination under Section 1981. It is

FURTHER ORDERED and ADJUDGED that Defendants' Motion to Dismiss Defendant Executive Airlines be, and the same is hereby, GRANTED and that party DISMISSED from the action.