**Beatrice M. THOMAS, Plaintiff,**

v.

**EXXON, U.S.A. and Exxon Corporation, Defendants.**

**Civil Action No. H–95–939.**

United States District Court,
S.D. Texas,
Houston Division.

Nov. 6, 1996.

Joseph L. Nealy, Slaughter & Nealy, Houston, TX, for Plaintiff.

Nicholas Vincent, Exxon Co., U.S.A., Houston, TX, for Defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Exxon, U.S.A. and Exxon Corporation's (collectively "Exxon") Motion for Summary Judgment (#19). Exxon seeks summary judgment on Plaintiff Beatrice M. Thomas's ("Thomas").claims of race/national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq., and the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Exxon's motion for summary judgment should be GRANTED IN PART and DENIED IN PART.

## I. Background

Thomas was employed by Exxon U.S.A. from November 5, 1980, through March 14, 1994. On November 1, 1992, she was transferred to the CORS Business Service Section of the Marketing Fuel Products Accounting and Services Division of the Controller's Department to work as a staff office assistant, where Francis G. ("Bud") Carr ("Carr") was her immediate supervisor.

On November 18, 1993, Exxon announced the sale of its credit card center operations to GE Capital. Sale of the credit card center created a surplus of approximately four hundred positions in the Controller's Department. Because of the staffing surplus, a reduction in force was necessary. The reduction in force was accomplished through a separation program which consisted of two phases—the voluntary separation of employees who chose to resign or retire and the involuntary termination of employees performing at relatively low levels in comparison to other employees. The voluntary phase began on January 6, 1994, and ended on February 28, 1994. The involuntary phase began on March 14, 1994. The employees who were to be included in the 1994 involuntary separation were notified that they were at risk for separation during the voluntary separation phase.

In May 1993, as part of Exxon's annual performance evaluation, Thomas's performance and contribution were evaluated and ranked in comparison to others at her level. The performance evaluation and ranking process yields a specific numerical ranking and a Rank Group Percentile ("RGP") for each employee, which indicates the employee's performance ranking compared to others at her level. According to Exxon, Carr, as Thomas's supervisor, rated Thomas, and Carr, as well as other individuals, participated in the ranking process. Thomas's RGP was 23. This indicated that Thomas was ranked at the 23rd percentile for all employees in her rank group and that 77% of the employees in her group were ranked higher. Carr completed Thomas's evaluation on November 18, 1993, at which time he gave her a performance review. Carr advised Thomas that her poor performance, relative to others, placed her at risk for being included in the involuntary phase of the Controller's Special Program of Severance Allowance ("CSPO-SA"). On December 7, 1993, Thomas submitted a document entitled "Review of the Performance Assessment Discussion" in rebuttal to Carr's evaluation of her performance. On February 18, 1994, Thomas complained to Debby Benson, an Exxon Senior Human Resources specialist, about perceived racial discrimination and sexual harassment.

In order to meet the desired reduction in the number of employees necessitated by the closing of the credit card center, Exxon determined that the involuntary phase of the separation program would involve termination of employees whose RGP was 0 to 30. Employees whose performance ranked in the bottom 30% of Thomas's rank group were subject to layoff unless excluded by their proximity to annuitant status or their long service. Exxon excluded from the involuntary phase of the program two categories of employees: (1) persons with 25 or more years of service and (2) persons with 15 or more years of service who were between the ages of 52 and 54.

On March 14, 1994, Carr informed Thomas that she had been designated for involuntary separation as part of CSPOSA. The CSPO-SA separation program included the separation of approximately 321 employees of which more than 170 were involuntarily separated. Carr informed Thomas that she would be expected to complete all work assignments and that she would continue in her position until such work assignments were completed, or August 31, 1994, whichever came first. After being notified of her status, Thomas taped an envelope to Carr's door which contained Thomas's Exxon credit card, which had been cut up, and her card key access badge. Thomas subsequently left the build-

ing. According to Exxon, based on Thomas's conduct on March 14, 1994, Exxon treated her separation as a resignation.

On the following day, March 15, 1994, Thomas filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which was amended on April 1, 1994, alleging that Exxon had discriminated against her due to her race, sex, and age, as well as retaliated against her for complaining about unequal treatment. The EEOC sent Thomas a right-to-sue letter on December 20, 1994, by certified mail. Thomas's daughter, Natalie Adams ("Adams"), who was eighteen years old at the time, signed the certified mail receipt on December 23, 1994. Thomas filed suit ninety-five days later on March 28, 1995. In Thomas's first amended complaint she alleges that Exxon discriminated against her on the basis of her race/national origin by terminating her employment and retaliated against for engaging in statutorily protected activities in violation of Title VII and § 1981.

## II. *Analysis*

### A. *The Standard for Summary Judgment*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which she believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). The moving party, however, need not negate the elements of the non-movant's case. *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047

(5th Cir.1996); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1069, 1075. The controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402 n. 5, 112 L.Ed.2d 349 (1990); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992). Nevertheless, neither " 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace*, 80 F.3d at 1047 (quoting *Little*, 37 F.3d at 1075). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. *Timeliness of Title VII Claims*

Exxon contends that Thomas's Title VII claims are time-barred because suit was not filed within ninety days after receipt of her notice of right to sue from the EEOC. "A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992); *see also Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir.1988); *Espinoza v. Missouri Pac. R.R.*, 754 F.2d 1247, 1250 (5th Cir.1985); 42 U.S.C. § 2000e–5(f). Title VII provides that:

if the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."

*Espinoza*, 754 F.2d at 1248 (quoting 42 U.S.C. § 2000e–5(f)(1)); *see also Dao*, 96 F.3d at 789.

The filing requirements of Title VII, however, are not jurisdictional prerequisites to bringing suit in federal court, but are more akin to statutes of limitation and are subject to the doctrines of waiver, estoppel, and equitable tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982); *see also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150–52, 104 S.Ct. 1723, 1725–26, 80 L.Ed.2d 196 (1984); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 2395 n. 3, 76 L.Ed.2d 628 (1983); *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir.1983) (en banc). Although the ninety-day filing requirement is not jurisdictional, it is a statutory precondition to maintaining a cause of action in federal court in the absence of extenuating circumstances. *Smith v. Flagship Int'l*, 609 F.Supp. 58, 61 (N.D.Tex.1985) (citing *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1070 (5th Cir.1981)). Like all Title VII filing requirements, the ninety-day requirement is treated as a statute of limitations for all purposes. *See Espinoza*, 754 F.2d at 1248 n. 1; *Nilsen*, 701 F.2d at 562. Thus, dismissal of a Title VII claim is proper where the plaintiff fails to demonstrate that the complaint was filed with the court on a timely basis. *Smith*, 609 F.Supp. at 61. In federal court, dismissals grounded on the statute of limitations are final adjudications on the merits. *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 819–20 (5th Cir.1989); *Nilsen*, 701 F.2d at 562.

In the instant case, the EEOC issued Thomas a notice of right to sue on December 20, 1994, and sent it to the address she had previously provided by certified mail. The return receipt was signed by Thomas's eighteen-year-old daughter, Adams, on December 23, 1993. In an affidavit attached to her response to the defendants' motion for summary judgment, Thomas contends that she did not physically receive the notice until December 28, 1994. Thomas, however, concedes that the right-to-sue letter had been signed for by someone in her household prior to that date. Thomas filed suit on March 28, 1995, ninety-five days after her daughter acknowledged receipt of the notice.

Numerous courts have held that "the period for filing begins to run when there has been receipt by a member of plaintiff's household at plaintiff's address, unless the plaintiff establishes equitable considerations which would justify tolling." *Million v. Frank*, 47 F.3d 385, 388 & n. 4 (10th Cir. 1995) (citing *Watts–Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir. 1993); *Scholar v. Pacific Bell*, 963 F.2d 264, 266–68 (9th Cir.), *cert. denied*, 506 U.S. 868, 113 S.Ct. 196, 121 L.Ed.2d 139 (1992); *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 654 (4th Cir.1987); *Espinoza*, 754 F.2d at 1248–50; *Law v. Hercules, Inc.*, 713 F.2d 691, 692–93 (11th Cir.1983); *Griffin v. Prince William Hosp. Corp.*, 716 F.Supp. 919, 921 (E.D.Va.1989); *Oswald v. Veeder Root Co.*, 662 F.Supp. 952, 953 (W.D.Pa. 1987); *Mouriz v. Avondale Shipyards, Inc.*, 428 F.Supp. 1025, 1027 (E.D.La.1977)).

In *Espinoza*, the EEOC mailed the right-to-sue letter to the plaintiff at his home address, the address he had previously provided. 754 F.2d at 1248–49. The notice was received by the plaintiff's wife on May 4, 1983; however, the plaintiff was out of town and did not actually see the letter until he arrived back in town on May 12, 1983, eight days later. *Id.* at 1249. The lawsuit was then filed ninety-two days after the letter was delivered to the plaintiff's home. *Id.* The district court held that the ninety-day period within which suit must be filed was triggered by receipt of the notice at the plaintiff's residence and that the plaintiff's suit was therefore untimely. *Id.* In affirming the district court, the Fifth Circuit held:

the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period unless the claimant,

through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice.

*Id.* at 1250.

Thomas's reliance on *Franks v. Bowman Transp. Co.* is misplaced. *See* 495 F.2d 398, 404 (5th Cir.1974), *rev'd*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). In *Espinoza*, the Fifth Circuit distinguished its holding in *Franks*, commenting that *Franks* involved a claimant who, through no fault of his own, never received the right-to-sue notice. 754 F.2d at 1249-50. The court further noted that later decisions have characterized the discussion of constructive receipt in *Franks* as *dicta*. *Id.* at 1250. Moreover, the court observed that *Franks* was decided at a time when there was considerable uncertainty about whether compliance with the ninety-day period was a jurisdictional prerequisite to suit and whether the period was subject to waiver and tolling; however, that uncertainty has been eliminated. *Id.*

In this case, Thomas, like the plaintiff in *Espinoza*, has proffered no equitable reasons for tolling the time period for filing. *See id.* Likewise, Thomas offers no explanation for her failure to file suit within the 85 days that remained following her "physical receipt." *Id.* at 1251. As the Eleventh Circuit has noted,

> there is no reason why a plaintiff should enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless. Plaintiff should be required to assume some minimum responsibility himself for an orderly and expeditious resolution of his dispute.

*Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir.1982); *accord Law*, 713 F.2d at 692; *Bell v. Eagle Motor Lines*, 693 F.2d 1086, 1087 (11th Cir.1982).

In *Scholar*, a case with facts remarkably similar to the case at bar, the Ninth Circuit rejected the plaintiff's argument that the ninety-day period did not begin to run until she personally received the letter. *See* 963 F.2d at 267. In that case, the EEOC's right-to-sue letter was delivered to the plaintiff's house on November 1, 1988, and the return receipt was signed by the plaintiff's daughter. *Id.* The plaintiff acknowledged that she had read the letter a few days after it was delivered to her home, but she did not file suit until February 2, 1989. *Id.* The court commented that "[t]he language of the statute establishes the 90-day period as running from the 'giving of such notice' rather than from the date the claimant actually 'receives' notice in hand." *Id.* (citing 42 U.S.C. § 2000e-5(f)(1); *Espinoza*, 754 F.2d at 1248-50). Accordingly, the court determined that the plaintiff had filed suit three days after the statute of limitations had expired. *Id.* Thus, the court held that the plaintiff's cause of action under Title VII was foreclosed because she did not file suit in a timely fashion under the statute. *Id.* at 268.

Here, as in *Law*, to extend the filing period based on a claim that the letter was not actually received by Thomas until December 28, 1993, five days after her daughter acknowledged receipt, would serve to foster a "'manipulable open-ended time extension which would render the statutory limitation meaningless.'" 713 F.2d at 693 (quoting *Lewis*, 673 F.2d at 1242). In order to comply with the ninety-day limitation period, Thomas was required to file suit on or before March 22, 1995. Thomas's complaint, however, was not filed until March 28, 1995. Because Thomas's complaint was untimely, her Title VII claims of race/national origin discrimination and retaliation are foreclosed by 42 U.S.C. § 2000e-5(f). Thus, Exxon is entitled to summary judgment with respect to Thomas's Title VII claims.

C. *Claims under 42 U.S.C. § 1981*

1. *Statute of Limitations*

█ The applicable statute of limitations for a § 1981 claim is two years. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 n. 22 (5th Cir.1994); *Price*, 846 F.2d at 1028. Because Thomas filed suit on March 28, 1995, approximately one year after her employment with Exxon was terminated on March 14, 1994, Thomas's § 1981 claims are timely.

## 2. Termination Claim

"Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir.1996); *see* 42 U.S.C. § 1981(a). More specifically, § 1981 provides that every citizen has the same rights as white citizens with regard to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

■ While Thomas's termination claim based on alleged race discrimination clearly falls within the ambit of § 1981, Exxon argues that Thomas's national origin claim is not covered by § 1981. The Fifth Circuit, however, has held that it will treat a case as asserting a claim under § 1981 whether the plaintiff labels the discrimination as based on national origin or race. *See Jatoi v. Hurst–Euless–Bedford Hosp. Auth.*, 807 F.2d 1214, 1218 (5th Cir.), *modified in part on other grounds*, 819 F.2d 545 (5th Cir.1987), *cert. denied*, 484 U.S. 1010, 108 S.Ct. 709, 98 L.Ed.2d 660 (1988). In some contexts, " 'national origin' discrimination is so closely related to racial discrimination as to be indistinguishable." *Bullard v. OMI Ga., Inc.*, 640 F.2d 632, 634 (5th Cir.1981). Thus, Thomas's assertions that she was discriminated against because of her Negro origin and race are sufficient to bring her claims within the confines of § 1981. *See Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987).

■ With regard to the burden of proof, the *McDonnell Douglas* burden-shifting framework applies in § 1981 cases in the absence of direct evidence of discriminatory intent. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989); *LaPierre*, 86 F.3d at 448 n. 2; *Wallace*, 80 F.3d at 1047–48; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The burden-shifting approach may be dispensed with altogether if the plaintiff is able to establish intentional discrimination by direct evidence of discriminatory motive. *Wallace*, 80 F.3d at 1047–48; *Kendall v.*

*Block*, 821 F.2d 1142, 1145 (5th Cir.1987); *Ramirez v. Sloss*, 615 F.2d 163, 168 (5th Cir.1980). When, as here, there is no direct evidence of discrimination, to maintain a claim under § 1981, a plaintiff must establish a *prima facie* case of discrimination by showing: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate against the plaintiff on the basis of race; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2377; *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir.1994); *see also Riley v. Transamerica Ins. Group Premier Ins. Co.*, 923 F.Supp. 882, 889 (E.D.La.1996).

In many instances, the Fifth Circuit has regarded the elements of a § 1981 claim to be sufficiently similar to those of a Title VII action to warrant the same legal analysis. *See LaPierre*, 86 F.3d at 448 n. 2; *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1284 n. 7 (5th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1099, 130 L.Ed.2d 1066 (1995); *see also LeJeune v. Avondale Indus.*, No. 95–2600, 1996 WL 225029, at *3 (E.D.La. May 1, 1996). In order to proceed on a discharge claim under Title VII, a plaintiff must satisfy the *prima facie* case requirement by demonstrating that: (1) she is a member of a protected group; (2) she was qualified for the position; (3) she was discharged; and (4) after her discharge, the position was filled by a person not within her protected group. *Singh v. Shoney's, Inc.*, 64 F.3d 217, 219 (5th Cir.1995); *Vaughn v. Edel*, 918 F.2d 517, 521 (5th Cir.1990) (citing *Norris v. Hartmarx Specialty Stores, Inc.*, 913 F.2d 253, 254 (5th Cir.1990)). A plaintiff may establish a *prima facie* case in other ways, as well. A plaintiff can show: (1) she is a member of a protected class; (2) she was qualified for the job in question; and (3) "employees outside the protected class were treated more favorably." *Waggoner v. City of Garland*, 987 F.2d 1160, 1163–64 (5th Cir. 1993) (citing *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985)). In any event, the plaintiff has the ultimate burden to prove intentional discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125

L.Ed.2d 407 (1993); *Marcantel v. Department of Transp. & Dev.*, 37 F.3d 197, 200 (5th Cir.1994).

Under any of these approaches, the plaintiff's *prima facie* case is dissolved if the defendant articulates a legitimate, nondiscriminatory reason for its employment decision. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Marcantel*, 37 F.3d at 200; *Moham v. Steego Corp.*, 3 F.3d 873, 875 (5th Cir.1993), *cert. denied*, 510 U.S. 1197, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994). Then, the burden shifts back to the plaintiff to show that the reason proffered by the employer is merely a pretext for discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824; *Marcantel*, 37 F.3d at 200; *Moham*, 3 F.3d at 875. If the defendant provides a legitimate reason for its actions, the plaintiff can avoid summary judgment only by producing sufficient evidence to create a genuine issue of material fact that impermissible discrimination caused the challenged action. *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir.), *aff'd*, 25 F.3d 1043, *cert. denied*, —— U.S. ——, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994).

■■■ "The Supreme Court has stressed that the *McDonnell* test was not intended to be a rigid or ritualistic test of disparate treatment." *Carter v. City of Miami*, 870 F.2d 578, 583 n. 12 (11th Cir.1989) (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983)). Because discrimination exists " 'in forms as myriad as the creative perverseness of human beings can provide,' certain specific elements do not constitute 'the alpha and omega' " of a *prima facie* case. *See Thornbrough*, 760 F.2d at 642 (quoting *McCorstin v. United States Steel Corp.*, 621 F.2d 749, 753–54 (5th Cir. 1980)); *see also Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 735 (5th Cir. 1977). Therefore, the Fifth Circuit has modified the *McDonnell Douglas* test in the context of cases that involve a general reduction in the employer's workforce. *Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 812 (5th Cir.1991); *Thornbrough*, 760 F.2d at 642; *Williams v. General Motors Corp.*, 656 F.2d 120, 127–28 (5th Cir.1981),

*cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Reduction-in-force cases are outside the embrace of *McDonnell Douglas*, as reduction-case plaintiffs are simply laid off and thus are incapable of proving the fourth *McDonnell Douglas* prong, *i.e.*, actual replacement by someone outside the protected group. *See Thornbrough*, 760 F.2d at 642. Thus, in situations such as this, where the employer reduces its workforce and does not replace the discharged employee, the fourth prong of the *prima facie* case is altered to require the plaintiff to produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams*, 656 F.2d at 129.

■■■ Hence, in order to establish a *prima facie* case of discrimination in a reduction-in-force case, the plaintiff must show: (1) she was within a protected group; (2) she was adversely affected by the employer's decision; (3) she was qualified to assume another position; and (4) evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate on the basis of her protected status in reaching the decision at issue. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (citing *Amburgey*, 936 F.2d at 812); *Thornbrough*, 760 F.2d at 642; *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir.1993); *Williams*, 656 F.2d at 129; *see also Mitchell v. Worldwide Underwriters Ins. Co.*, 967 F.2d 565, 567–68 (11th Cir.1992).

### a. *Prima Facie Case*

■■■ Here, Thomas has satisfied the first two elements of a *prima facie* case because she is African–American and was terminated by Exxon in March 1994. Exxon contends, however, that Thomas has failed to establish a *prima facie* case because she has failed to present evidence to support elements three and four—that she was qualified to assume another position at the time of her termination and that Exxon intended to discriminate against her due to her race/national origin.

Thomas's affidavit reveals that she worked for Exxon for thirteen years prior to her termination and acquired a vast amount of experience. It is uncontroverted that, throughout this time period, she consistently received raises, promotions, and commendations, and was never reprimanded. Moreover, she received a favorable performance review with respect to the position she held immediately prior to her transfer to Carr's section. Thus, as Thomas states in her affidavit, it appears that "[a]s a result of [her] experience [she] was definitely qualified to assume any number of positions at Exxon Company, U.S.A. when [Exxon] terminated [her] in March 1994."

With respect to the fourth element, Thomas asserts that "[t]he only below par evaluation received by me while I was working at Exxon came from Francis Carr." Thomas contends that as a result of Carr's subjective and discriminatory opinions of her job performance while working in his department, she was ranked in an unduly low percentile of employees and was subsequently terminated. Attached as Exhibit "D" to her response to Exxon's motion for summary judgment is a comparison chart, illustrating that of the three African–American employees in Carr's department, none remained after the reduction in force. From this evidence, a factfinder might reasonably conclude that Thomas's race was a motivating factor in Exxon's decision to terminate her. Thus, contrary to Exxon's assertion, Thomas has established a *prima facie* case of race discrimination.

### b. *Legitimate, Nondiscriminatory Reason*

■ Exxon argues that it has articulated a legitimate, nondiscriminatory reason for Thomas's selection for layoff—that in 1994, due to a staffing surplus caused by the sale of its credit card center, it conducted a reorganization and workforce reduction that resulted in the separation of approximately 320 employees. Exxon has submitted the affidavit of Robert F. Jackson ("Jackson"), a Human Resources Advisor, which states that "Thomas was included in the involuntary phase of the separation program solely because her RGP of 23 placed her within the 0 to 30 range of those targeted for involuntary separation." Accordingly, Exxon has suffi-

ciently articulated a legitimate, nondiscriminatory reason for Thomas's termination.

### c. *Pretext*

■ Thomas, however, maintains that Carr discriminated against African–Americans under his supervision, including Thomas, by intentionally giving them low performance evaluations and rankings, thus leading to their eventual termination. Thomas contends that Carr's evaluation of her is inconsistent on its face. Attached to Thomas's evaluation by Carr is her "Review of the Performance Assessment Discussion," which she submitted to Exxon on December 7, 1993, as a rebuttal to Carr's evaluation of her. Thomas asserts that the "Dimensions of Performance are contradictory, inconsistent, and vague...."

A review of the evaluation reveals that some of Carr's comments appear to be contradictory. For example, under the heading entitled "Initiative and Self–Monitoring," Carr states, among other things, "Needs to bring some task [sic] to a quicker conclusion." Yet, under the heading "Planning and Organizing Own Work," Carr states, "Maxine is organized, work area is neat, and files are up [to] date. Plans work to allow completion of task within specified time. [C]onsistently meets established deadlines." Further, under "Adaptability to Time Pressures & Changing Priorities," Carr states, "Most of Maxine's work is completed during normal work hours without tight deadlines. During the few occasion [sic] (month end close) when deadlines are present, she does whatever is necessary to get the job done. Limited exposure in this area." Another inconsistency in Carr's evaluation appears in his assessment under the heading "Interacting with Others." Here, Carr states, "Maxine maintains a good rapport with some of her peers. Very direct in her dealings with people. At times appears to come across in an antagonistic manner. Have seen improvement in this area." In other sections, such as "Teamwork," "Diversity," and "Team Member Effectiveness," however, Carr states that Thomas is a "Good team player...." "Maxine values the input received from working with individuals from a diverse background.

She is willing to share her knowledge with all co-workers." "Maxine is a team player who is always willing to help."

Moreover, it appears that Thomas received a favorable evaluation from her prior supervisor, Carolyn McCrindle ("McCrindle"). Attached as Exhibit "A" to Exxon's supplemental response to Thomas's production request is an evaluation prepared by McCrindle on February 25, 1992. Thomas was rated better than most in several categories. In addition, McCrindle stated in the comments section of the evaluation, "Maxine continues to show improvement in her current assignment and is capable of handling a heavier and more diverse workload. We need to provide her that opportunity during the next review period."

In its reply brief, Exxon asserts that while Carr rated Thomas in 1993 and was among those who participated in the ranking process, he was only one of many individuals who determined her rank. Hence, Carr was not solely responsible for her low RGP, which ultimately led to her termination. Exxon, however, does not provide the names, much less affidavits or deposition testimony regarding Thomas's ranking, of any other individuals who participated in the ranking process. Furthermore, Exxon concedes that of the three African–American employees supervised by Carr, none remains an Exxon employee. Exxon points out, however, that one of these employees, Raymond Melton ("Melton"), voluntarily retired and that Sandra Tomczak, a white employee in Carr's department, was involuntarily separated for the same reason as Thomas, because of her low RGP. Exxon does not account for the involuntary separation of Gwendolyn Meshack, the only other African–American employee besides Melton and Thomas.

The evidence reflects that during her thirteen-year tenure with Exxon, Thomas acquired a number of skills and received favorable reviews prior to being placed under Carr's supervision. In the absence of a racial breakdown of all the employees affected by Exxon's reduction in force, information about the comparative performance of other employees in Thomas's ranking group, and testimony from other persons who participat-

ed in the ranking process, a specter of racial discrimination exists. Thomas has adduced adequate evidence to create a fact issue with respect to her race/national origin claim, as it appears that similarly situated employees outside the protected group were not terminated while those within the protected group were. Ultimately, a determination of whether Exxon's "decision was discriminatory will turn on the sufficiency of [Thomas's] evidence and the credibility of the attesting parties, functions properly left to the fact finder and not to be resolved on summary judgment." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 183 (5th Cir.1996). Accordingly, summary judgment is not appropriate, and Thomas may proceed to trial on her termination claim under § 1981.

### 3. *Retaliation Claims*

▪ Thomas claims that Exxon retaliated against her in violation of § 1981 because of her opposition to employment practices which she "reasonably believed to be discriminatory against her because of her Negro origin and race."

Relying on *Patterson,* the Fifth Circuit, in *Carter v. South Cent. Bell,* held that § 1981 no longer covers claims of retaliatory discharge. 912 F.2d 832, 840 (5th Cir.1990) (citing *Patterson,* 491 U.S. at 179–80, 109 S.Ct. at 2373–74); *see Douglas v. DynMcDermott Petroleum Operations Co.,* No. 95–1967, 1996 WL 365671, at *4 (E.D.La. July 2, 1996); *Carpenter v. Gulf States Mfrs., Inc.,* 764 F.Supp. 427, 433–34 (N.D.Miss.1991). In *Carter,* the court set forth three arguments in support of its holding that § 1981 no long applies to retaliatory termination claims. *Id.* First, Title VII protects an employee from retaliation, and § 1981 should not be interpreted to duplicate that protection because the overlap of the two statutes is unnecessary. *Id.* Second, when an employee files a charge of discrimination with the EEOC, the employee is asserting a right created by the civil rights statutes, not by an employment contract with the employer. Therefore, the employee's right to enforce an employment contract is not impaired. *Id.* Finally, the court reasoned that if it were to hold that § 1981 encompasses claims of retaliatory discharge, the court would be encouraging liti-

gation to determine what the employer's subjective motive was at the time of the employee's discharge—"was it to retaliate or 'merely' to discriminate." *Id.* at 840–41. The court found such an inquiry to be pointless because both motives are equally invidious, and the employee suffers the same harm. *Id.* at 841. Hence, the Fifth Circuit concluded, "Because section 1981 no longer covers retaliatory termination, all suits for discriminatory dismissal must be brought under Title VII." *Id.*

Nevertheless, *Patterson,* the case relied upon by the Fifth Circuit in *Carter,* was superseded by the Civil Rights Act of 1991, 42 U.S.C. § 1981(b). *See Valdez v. San Antonio Chamber of Commerce,* 974 F.2d 592, 594 (5th Cir.1992). "Although § 1981(b) does not directly state that retaliation claims are actionable under § 1981, the legislative purpose of § 1981(b) clearly evinces that Congress intended such claims to be actionable under § 1981." *Patterson v. Augat Wiring Sys., Inc.,* 944 F.Supp. 1509, 1519 (M.D.Ala. Oct. 28, 1996). The express purpose of the Act is " 'to provide appropriate remedies for intentional discrimination and unlawful harassment in the workplace,' and 'to respond to recent decisions of the Supreme Court by expanding the scope of relevant civil rights statutes in order to provide adequate protection to victims of discrimination.' " *Id.* (quoting Civil Rights Act of 1991, Pub.L. No. 102–166, §§ 3(1) and (4), 105 Stat. 1071 (1991)). In addition, the legislative history reflects that Congress intended to make retaliation claims actionable under § 1981. *Id.* The House Committee on Education and Labor, the committee to which the bill to amend the Civil Rights Act of 1964 was assigned, stated:

> Section 210 would overrule *Patterson* by adding at the conclusion of section 1981 a new subsection (b).... The Committee intends this provision to bar all race discrimination in contractual relations. The list set forth in subsection (b) is intended to be illustrative rather than exhaustive. In the context of employment discrimination, for example, this would include, but not be limited to, claims of harassment, discharge, demotion, promotion, transfer, retaliation, and hiring.

*Id.* at 1519–20 (quoting H.R.Rep. No. 40(I), 102d Cong., 1st Sess. 92 (1991), reprinted in U.S.C.C.A.N. 549, 630); *Adams v. City of Chicago,* 865 F.Supp. 445, 446–47 (N.D.Ill. 1994).

The Fifth Circuit, however, has not definitively addressed whether retaliation claims may be maintained under § 1981, as amended by the Civil Rights Act of 1991. *See Steverson v. Goldstein,* 24 F.3d 666, 670 & n. 7 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). Without expressly discussing the issue, in *Steverson,* the court affirmed a jury verdict awarding damages to the plaintiff for retaliatory discharge under 42 U.S.C. §§ 1981 and 1983. *Id.* Prior to *Patterson,* it was clear that retaliation claims were actionable under § 1981. *See Goff v. Continental Oil Co.,* 678 F.2d 593, 597–99 (5th Cir.1982). Other circuits and district courts that have interpreted § 1981(b) have indicated that retaliation is now actionable under § 1981. *Augat Wiring Sys., Inc.,* 944 F.Supp. at 1520; *see Evans v. Kansas City, Mo. Sch. Dist.,* 65 F.3d 98, 101 (8th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1319, 134 L.Ed.2d 472 (1996); *Butts v. City of New York Dep't of Hous. Preservation & Dev.,* 990 F.2d 1397, 1404 (2d Cir.1993); *Collins v. Executive Airlines, Inc.,* 934 F.Supp. 1378, 1382 (S.D.Fla.1996); *Campbell v. Grayline Air Shuttle, Inc.,* 930 F.Supp. 794, 803 (E.D.N.Y.1996); *DuBose v. Boeing Co.,* 905 F.Supp. 953, 959 (D.Kan. 1995); *Humphrey v. Council of Jewish Fed'ns,* 901 F.Supp. 703, 711 (S.D.N.Y.1995); *Wilson v. Shell Oil Co.,* No. Civ.A. No. 94–3693, 1995 WL 505482, at *5 (E.D.La. Aug. 24, 1995); *Williams v. Carrier Corp.,* 889 F.Supp. 1528, 1530 (M.D.Ga.1995); *Adams,* 865 F.Supp. at 446–47; *Cabiness v. YKK (USA), Inc.,* 859 F.Supp. 582, 588 (M.D.Ga. 1994), *aff'd,* 98 F.3d 1354, No. 95–9012 (11th Cir. Sep. 24, 1996); *Lewis v. American Foreign Serv. Ass'n,* 846 F.Supp. 77, 79 (D.D.C. 1993); *Freeman v. Atlantic Ref. & Mktg. Corp.,* No. 92–7029, 1994 WL 156723, at *8 (E.D.Pa. Apr. 28, 1994). Considering the legislative purpose and legislative history of the Civil Rights Act of 1991, as well as the

case law, a retaliatory discharge claim now appears to be cognizable under § 1981.

To establish a *prima facie* case of retaliation under § 1981, the plaintiff must show, as under Title VII: (1) she participated in statutorily protected activity; (2) an adverse employment action occurred; and (3) a causal connection exists between the protected activity and the adverse action. *See Goff,* 678 F.2d at 599 (citing *Dickerson v. Metropolitan Dade County,* 659 F.2d 574, 580–81 (5th Cir. 1981)); *see also Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th Cir.1995); *Pierce v. Texas Dep't of Criminal Justice Inst. Div.,* 37 F.3d 1146, 1151 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995); *Barrow v. New Orleans S.S. Ass'n,* 10 F.3d 292, 297 (5th Cir.1994); *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir.1992). In order to maintain an action for retaliation, an employee need only establish that she had a reasonable belief that discriminatory practices existed. *De Anda v. St. Joseph Hosp.,* 671 F.2d 850, 852 n. 2 (5th Cir.1982). In addition, the employee must demonstrate that her opposition to unlawful activity was a motivating or determining factor in the adverse employment action taken by her employer, *i.e.,* there must be a causal connection. *Jack v. Texaco Research Ctr.,* 743 F.2d 1129, 1131 (5th Cir. 1984); *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116 (5th Cir.1983). Thus, the plaintiff must show that she would not have been subjected to the adverse action "but for" the protected activity. *See Mayberry,* 55 F.3d at 1092; *Jack,* 743 F.2d at 1131.

While Thomas may be able to satisfy the first and second elements of a *prima facie* case of retaliation, *i.e.,* that she engaged in statutorily protected activity by complaining to her employer about race discrimination and sexual harassment and that an adverse employment action occurred when she was terminated, Thomas has not established a "but for" causal link between her complaint of alleged discrimination and her low RGP ranking or her subsequent layoff. The evidence reflects that Thomas was ranked in the 23rd percentile in May 1993, and her performance rating was completed in November 1993. It was not until February 18, 1994, however, that Thomas first raised allegations of race discrimination and sexual harassment with the Exxon Human Resources Department. When Thomas complained to Human Resources, both the rating and ranking process were complete. Consequently, Thomas's low ranking in May 1993 could not have been in retaliation for her allegations of discrimination and harassment in February 1994. Thus, summary judgment is warranted as to Thomas's retaliatory termination claim.

Thomas's remaining claims—that she was scrutinized more closely than comparable employees, that she was ostracized, and that her property was converted and held while Exxon was attempting to construct a pretextual reason for firing her—are merely conclusory allegations. Thomas offers no factual support for any of these allegations and makes no showing that Exxon participated in, condoned, or was even aware of the various "retaliatory" incidents alleged by Thomas. Therefore, summary judgment is also proper as to Thomas's retaliatory treatment claims. *See Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075.

### III. *Conclusion*

Accordingly, Exxon's motion for summary judgment is GRANTED with respect to Thomas's claims of racial discrimination and retaliation under Title VII and her claims of retaliation under 42 U.S.C. § 1981. Summary judgment is DENIED with regard to Thomas's termination claim under 42 U.S.C. § 1981.

IT IS SO ORDERED.